# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ELSMERE PARK CLUB, L.P., a Delaware limited partnership,<br><br>    Plaintiff,<br><br>TOWN OF ELSMERE, a Delaware municipal corporation, ELLIS BLOMQUIST, EUGENE BONEKER and JOHN GILES,<br><br>    Defendants. | C.A. No. 04-cv-01321-SLR<br><br>**JURY TRIAL DEMANDED** |

## FIRST AMENDED COMPLAINT

Plaintiff Elsmere Park Club, L.P. ("EPC") brings this action against defendants Town of Elsmere (the "Town"), Ellis Blomquist, Eugene Boneker, and John Giles for damages arising out of the Town's denial of due process to EPC by wrongly condemning the apartment complex it owned in Elsmere and improperly evicting its residents without affording EPC any opportunity to be heard or to correct the alleged defects, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983, et seq. In support of its complaint, EPC alleges as follows:

### THE PARTIES

1. EPC is a limited partnership duly organized and existing under the laws of the State of Delaware, with a principal place of business at all relevant times at 1410 Cypress Avenue, Elsmere, Delaware 19805. At all relevant times, EPC owned the Elsmere Park Apartments (the "Apartments") located in the Town of Elsmere, Delaware.

DEL1 60873-1

2.       The Town is a municipal corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 11 Poplar Avenue, Elsmere, Delaware 19805.

3.       Defendant Ellis Blomquist at all relevant times was the Town Code Enforcement Officer, the Town official in charge of determining and setting Town policy concerning whether or not to condemn buildings and evict their inhabitants for violations of and pursuant to the Delaware State Housing Code, the Elsmere Property Maintenance Code and applicable law, and at all relevant times acted under color of state law. Defendant Blomquist is sued in his official and individual capacities.

4.       Defendant Eugene Boneker at all relevant times was the Town Manager, the Town official to whom Defendant Blomquist reported. Upon information and belief, Defendant Boneker was the Town official with ultimate responsibility for final Town decisions and policy regarding all matters on which Town employees worked, including without limitation condemnation of buildings and eviction of their inhabitants for violations of and pursuant to the Delaware State Housing Code, the Elsmere Property Maintenance Code and applicable law, and at all relevant times acted under color of state law. Defendant Boneker is sued in his official and individual capacities.

5.       Defendant John Giles is the current Town Manager of Elsmere. At all relevant times he represented and advised the Town, and was consulted by Town officials regarding the condemnation of the Apartments in October 2002. The Town accepted the input, decisions and

2

DEL1 60873-1

policies of Defendant Giles regarding the condemnation of the Apartments, including the decision to condemn the Apartments and evict the residents without a hearing. Defendant Giles knew or should have known that the Town would accept his input, decisions and policies. At all relevant times, Defendant Giles acted for and on behalf of the Town and under color of state law. Upon information and belief, Defendant Giles acted jointly with other Town officials and representatives in making the decision to condemn the Apartments and in formulating the Town's policy with respect to such decision.

## JURISDICTION AND VENUE

6.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

7.   Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b) in that the defendants resides in this district and a substantial part of the events giving rise to the claims stated herein occurred in this district.

## BACKGROUND FACTS

8.   Plaintiff purchased the Apartments on or about March 31, 1986.

9.   At all relevant times, the Apartments were a garden-style apartment complex consisting of 156 residential units in 39 separate buildings. Each building is connected to a number of other buildings, forming 9 separate building groups at the Apartments.

10. At all relevant times, each building of the Apartments was three stories tall, with two apartment units on each of the top two floors of the building (four residential units per building), and the lowest floor being a basement that is partly above ground. One side of the basement of each building provided laundry facilities and storage space. Before 1989, the other side of the basement was an apartment unit rented to tenants.

11. In and around 1989, the Apartments were flooded as a result of Hurricane Hugo. A number of the basement apartments became inundated with water and all were subsequently condemned by the Town.

12. In and around 1996, Plaintiff was directed by the Town to brick over the windows to the uninhabited, unused basement apartment windows in each building and to prevent entry to this unit by securing it with plywood.

13. On late Friday afternoon, October 4, 2002, Defendant Blomquist arrived at the Apartments to inspect the uninhabited, unused, secured basement apartments at 1405 and 1421 Cypress Avenue for mold contamination. Upon information and belief, Defendant Blomquist was accompanied by a representative of the Delaware Division of Public Health.

14. Upon the completion of his inspection that day, Defendant Blomquist, either after consulting with Defendant Boneker and/or Defendant Giles or on his own without such consultation, directed Plaintiff's management to nail shut numerous doors and display large red "CONDEMNED" signs on these two buildings. Defendant Town, by and through the actions

4

and decisions of Defendants Blomquist and Boneker, required and forced the eviction of all of the residents of the eight upper level apartments in the two buildings, against their wishes.

15.   Only after it condemned the buildings and evicted the residents did Defendant Town, acting by and through Defendants Boneker and/or Blomquist, issue to Plaintiff a Notice of Condemnation which set forth the basis for the Town's actions. The Notice stated that the buildings were condemned as "Unfit for Human Habitation" due to the presence of mold and microbial growth in the basement of the buildings, and required that the premises be vacated immediately.

16.   Prior to the condemnation and eviction, Defendant Town did not use any testing equipment to determine the nature and extent of the alleged mold problem, including whether or not the alleged mold condition in the secured, unused and uninhabited basement units had migrated to the occupied apartments.

17.   Plaintiff retained its own expert and immediately attempted to test and remedy the situation. In particular, Plaintiff requested of the Town several times on October 4, 2002 and over the weekend that the Town promptly issue the appropriate licenses and permits to allow Plaintiff's contractors to seal off and abate the basement areas. The Town repeatedly denied Plaintiff's requests.

18.   The next day, on Saturday, October 5, 2002, the Town issued a "News Release" to the "News Media" detailing the inspection and subsequent condemnation of 2 apartment buildings owned by Plaintiff. The "News Release" also detailed how seven families were

5

"evacuated" due to a "mold condition . . . that created . . . a substantial risk to the health of the occupants of those buildings." This statement was false in that no appropriate evaluation or testing had been performed.

19.     On Monday, October 7, 2002, Regina O'Neill and a representative from CPR Services (a company that specializes in basement mold remediation) sought on behalf of Plainitff to obtain a permit from the Town to begin immediate remediation of the two buildings that had been condemned on Friday, October 4, 2002. The Town, through Defendant Giles among others, denied Plaintiff's request with the full knowledge and approval of the Town. Defendant Giles held himself out as authorized to act for and on behalf of the Town in denying Plaintiff's request, and O'Neill reasonably believed that he was acting for and on behalf of the Town.

20.     Defendant Giles' involvement in the condemnation process, including without limitation his participation in Town meetings, was with the full knowledge, approval and authority of the Town.

21.     On Monday, October 7, 2002, Defendant Blomquist returned to inspect additional buildings, condemned an additional building, and ordered the residents of the 4 upper level apartments of that building to leave their homes.

22.     On the evening of October 7, 2002, the Town held an "informational" meeting regarding the condemnation, the eviction of tenants and its ongoing investigation. At the meeting, portions of which were broadcast locally on television that evening and the next morning, public officials associated with and whose statements were explicitly and/or implicitly

6

endorsed by the Town spoke of the toxicity of the mold in the buildings and its dangerous effect on young children.

23.   The Town intentionally or recklessly provided a forum for such false and defamatory statements by public officials regarding the danger and toxicity of materials found on Plaintiff's property, all without proper information concerning the mold and its potential danger and toxicity in the areas inhabited by tenants.

24.   In the early evening of October 8, 2002, Defendant Town, acting by and through Defendants Blomquist, and/or Boneker and/or Giles, condemned 11 more buildings.

25.   During the course of the next few days and continuing until approximately October 9, 2002, Defendant Town, acting by and through Defendant Blomquist, inspected additional buildings at the Apartments.

26.   Upon information and belief, Defendant Blomquist was accompanied by a representative of the Delaware Division of Public Health on some of the inspections during October 7-9, 2002.

27.   Upon information and belief, Defendant Blomquist did not inspect, and no other Town or Delaware Division of Public Health representative inspected, certain apartments and buildings which were condemned.

28.   Upon information and belief, Defendant Blomquist performed certain inspections without being accompanied by any representative of the Delaware Division of Public Health.

7

29. Upon information and belief, Defendant Giles participated in the investigation and condemnation of the Apartments described above.

30. Upon information and belief, Defendant Giles participated in the formulation of Town policy regarding the condemnation of buildings and the eviction of residents at the Apartments, as described above.

31. Eventually, Defendant Town, acting by and through Defendants Blomquist, Boneker, and/or Giles, condemned all of the buildings and evicted all of the tenants at the Apartments, except for the building at 1410 Cypress Avenue, which housed the rental office.

32. Defendant Town, acting by and through Defendant Blomquist, issued most if not all of the Notices of Condemnation after the buildings in question had been posted as condemned and the tenants evicted, thereby depriving Plaintiff of proper notice of the Town's unlawful actions before Plaintiff's property was confiscated.

33. The Notices of Condemnation which Defendant Town issued by and through Defendant Blomquist stated that the buildings were condemned as "Unfit for Human Habitation" due to the presence of mold and microbial growth in the basement of the buildings. In addition, the Notices alleged evidence of sewage leaking from the building sewer into the basements, although the Town did not claim that this alleged violation rendered the buildings unfit for human habitation under Code Section PM 108.1.3.

34. In fact, in a number of the secured, unused and uninhabited basements, no mold growth was present.

35. In a number of the secured, unused and uninhabited basements, minimal mold growth presenting no danger to the residents of the building was present.

36. In virtually all of the residential units in the Apartments, no mold growth was present attributable to the conditions observed in any of the basements. Isolated instances of mold growth in a small number of residential units is not related to mold growth in the basements.

37. In fact, mold is present at all times in the environment, and it does not present a health threat to most normal, healthy individuals. Mold is not toxic to humans.

38. At all relevant times, Defendants acted under authority of and were required to act in compliance with the Delaware State Housing Code.

39. Section 4104 of the Delaware State Housing Code provides:

> The entire chapter shall be liberally interpreted so as to minimize displacement of persons whose dwelling units may deviate from this chapter's specifications but do not pose an imminent threat to the health, safety and general welfare of the occupants and other persons. Additionally, this chapter is to be liberally interpreted so as to minimize hardships to persons that inhabit or own dwelling units which deviate from this chapter's specifications but do not pose an imminent threat to the health, safety and general welfare of the occupants and other persons.

31 Del. C. § 4104.

40. At all relevant times, Defendants applied the standards of the New York City Department of Health "Guidelines on Assessment and Remediation of Fungi in Indoor Environments" (the "New York Guidelines") to the conditions at the Apartments.

41. Under the New York Guidelines, a building-wide evacuation is not indicated except in very limited circumstances. The New York Guidelines state:

> Decisions about removing individuals from an affected area must be based on the results of [a] medical evaluation, and be made on a case-by-case basis. *Except in cases of widespread fungal contamination that are linked to illnesses throughout a building, building-wide evacuation is not indicated.*

Guidelines, p.2 (italics added).

42. As set forth in the Delaware State Housing Code and the New York Guidelines, Defendants could have, and were required to, take additional time and further steps to determine whether or not condemnation and eviction were appropriate before taking such actions.

43. Defendants did not take such further action.

44. Defendants did not find, and there was not, widespread fungal contamination in the living areas of the Apartments.

45. Defendants did not find, and there was not, any link between fungal contamination in the basements of the Apartments and illnesses throughout the Apartments.

DEL1 60873-1

46. Many residents had lived at the Apartments for a number of years. Prior to the time of the condemnation and eviction, there was no known complaint by any resident relating to the presence of mold in the Apartments or mold-related symptoms.

47. Upon information and belief, prior to the time of the condemnation and eviction, Defendants did not seek to obtain any information concerning a potential link between mold at the Apartments and health effects to its residents.

48. Prior to the time of the condemnation and eviction, Defendants did not ask Plaintiff whether or not any residents or others had complained about the presence of mold or mold-related symptoms at the Apartments.

49. Upon information and belief, prior to the condemnation and eviction, Defendants did not ask any residents if they had any symptoms or potential reactions to mold at the Apartments.

50. Defendants did not perform any testing at the Apartments to assess the presence of mold in the air of the residential units before Defendants condemned the Apartments and evacuated the tenants.

51. Upon information and belief, Defendants did not perform any case-by-case evaluation to determine whether or not individuals should be removed from the Apartments.

52.  At or about the time of the condemnation of the Apartments and eviction of the residents, the conditions at the Apartments did not pose an imminent threat to the health, safety and general welfare of its residents.

53.  At or about the time of the condemnation of the Apartments and eviction of the residents, mold at the Apartments did not present a risk to the inhabitants that required condemning the Apartments and evicting the residents.

54.  Defendants should not have condemned the Apartments, and Defendants should not have evicted the residents.

55.  At or about the time of the condemnation of the Apartments and eviction of the residents, Defendants failed to follow the New York Guidelines they had themselves adopted and failed to take appropriate actions to minimize the displacement of and hardships to the residents of the Apartments.

56.  Plaintiff was provided no opportunity to contest the condemnation or eviction notices, to offer any evidence in opposition to these determinations, or to cure the deficiencies claimed to exist before the buildings were condemned and the tenants evicted.

57.  Defendant Town required Plaintiffs to remediate the condemned Apartments before they could be reinhabited, but the Town did not permit Plaintiff or its contractors access to the Apartments to do so.

58. As a result of Defendants' improper and unlawful actions, residents were prevented from living in the Apartments and were forced to find housing elsewhere.

59. As a result of Defendants' improper and unlawful actions, Plaintiff lost all of its tenants, who moved elsewhere and entered into new leases with other landlords.

60. As a further result of Defendants' improper and unlawful actions, the value of the Apartments was greatly reduced. Plaintiff was required to sell the Apartments at a significant loss compared to the value of the Apartments before Defendants' wrongful actions.

61. Defendants Blomquist and/or Boneker and/or Giles had the authority to make decisions and set policy for the Town, and one or more of these Defendants did make the decision and set the policy for the Town to condemn the Apartments without affording Plaintiff an adequate hearing or an opportunity to be heard.

62. At no time did Defendants provide Plaintiff a meaningful opportunity to be heard concerning the deprivation of Plaintiff's property.

63. State law does not and did not provide Plaintiff an adequate remedy for Defendants' wrongful conduct set forth herein.

## COUNT I

### Violations of 42 U.S.C. § 1983 – Procedural Due Process

### (Against Defendant Town)

64. Plaintiff incorporates paragraphs 1 through 63 by reference as if set forth fully herein.

65. Defendant Town's condemnation of the Apartments and eviction of the residents of the Apartments deprived Plaintiff of its property.

66. Defendant Town condemned the Apartments and evicted the residents of the Apartments without affording Plaintiff any opportunity for a hearing or to cure the alleged deficiencies in the Apartments, and without affording Plaintiff any other due process of law. In particular, but without limitation, Defendant Town failed to (a) follow the procedure dictated by law and the Town's own standards in determining whether or not condemnation and eviction were proper, (b) afford Plaintiff an opportunity to challenge the decision to condemn the Apartments and evict the residents, (c) afford Plaintiff an opportunity to offer any evidence in opposition to the Defendants' determinations or (d) afford Plaintiff an opportunity to cure the alleged deficiencies before the Apartments were condemned and the residents evicted.

67. At all relevant times, Defendant Town acted under color of state law in depriving Plaintiff of property without a hearing or due process of law.

68. Defendant Town's condemnation of the Apartments and eviction of its tenants deprived Plaintiff of property rights without due process of law in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

14

69. The actions of Defendant Town to deprive Plaintiff of its civil rights were made in an intentional, deliberate, willful, reckless, knowing, grossly negligent and/or negligent manner. Defendant Town knew or was recklessly indifferent to the harm it caused Plaintiff by denying it the procedural protection that it was due under the United States Constitution.

70. As a result of Defendant Town's denial of its civil rights, 42 U.S.C. § 1983, Plaintiff has suffered damages in the form of loss of rental income and sale of the Apartments at a price significantly below the value of the Apartments before Defendant Town's wrongful actions.

71. As a result of Defendant Town's violations of its civil rights, Plaintiff has sustained significant damages.

72. As a result of Defendant Town's violations of its constitutionally protected property rights without due process of law, Plaintiff is entitled to damages, including attorneys fees, under 42 U.S.C. §§ 1983 and 1988.

WHEREFORE, Plaintiff Elsmere Park Club, L.P. respectfully demands judgment in its favor and against Defendant Town for compensatory damages to be determined at trial, plus interest, costs of suit, attorneys fees and such other and further relief as the Court deems just and proper.

## COUNT II

### Violations of 42 U.S.C. § 1983 – Procedural Due Process

### (Against Defendants Blomquist, Boneker, and Giles)

73. Plaintiff incorporates paragraphs 1 through 72 by reference as if set forth fully herein.

74. At all relevant times, Defendants Blomquist, Boneker, and Giles were the Town officials and/or representatives whose edicts and/or acts represented official Town policy concerning the condemnation of the Apartments and the eviction of its tenants without affording Plaintiff any hearing or opportunity to cure the alleged deficiencies.

75. At all relevant times, Defendants Blomquist, Boneker, and Giles (the "Individual Defendants"), and thereby the Town, acted under color of state law in depriving Plaintiff of property secured to it by the United States Constitution and federal law without a hearing or due process of law.

76. The Individual Defendants', and thereby the Town's, condemnation of the Apartments and eviction of its residents deprived Plaintiff of property rights without due process of law in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

77. In particular but without limitation, the Individual Defendants failed to failed to (a) follow the procedure dictated by law and the Town's own standards in determining whether or not condemnation and eviction were proper, (b) afford Plaintiff an opportunity to challenge the decision to condemn the Apartments and evict the residents, (c) afford Plaintiff an

16

opportunity to offer any evidence in opposition to the Defendants' determinations or (d) afford Plaintiff an opportunity to cure the alleged deficiencies before the Apartments were condemned and the residents evicted.

78. The actions of the Individual Defendants to deprive Plaintiff of its civil rights were made in an intentional, deliberate, willful, reckless, knowing, grossly negligent and/or negligent manner. The Individual Defendants knew or were recklessly indifferent to the harm they caused Plaintiff by denying it the procedural protection that it was due under the United States Constitution.

79. As a result of the Individual Defendants' denial of Plaintiff's civil rights, 42 U.S.C. § 1983, Plaintiff has suffered damages in the form of loss of rental income and sale of the Apartments at a price significantly below the value of the Apartments before the Individual Defendants' wrongful actions.

80. As a result of the Individual Defendants' violations of Plaintiff's civil rights, Plaintiff has sustained significant damages.

81. As a result of the Individual Defendants' violations of Plaintiff's constitutionally protected property rights without due process of law, Plaintiff is entitled to damages, including attorneys fees, under 42 U.S.C. §§ 1983 and 1988.

WHEREFORE, Plaintiff Elsmere Park Club, L.P. respectfully demands judgment in its favor and against the Individual Defendants for compensatory damages to be determined at trial, plus interest, costs of suit, attorneys fees and such other and further relief as the Court deems just and proper.

KLEHR, HARRISON, HARVEY,
BRANZBURG & ELLERS LLP

By: _____
David S. Eagle (Del. Bar 3387)
Patrick A. Costello (Del. Bar 4535)
919 Market Street, Suite 1000
Wilmington, DE 19801
(302) 426-1189
deagle@klehr.com
pcostello@klehr.com

Attorneys for Plaintiff, Elsmere Park Club, L.P.

OF THE PENNSYLVANIA BAR:
Douglas F. Schleicher
Bryan D. Weiss

Dated: March 23, 2005

18

DEL1 60873-1