IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ELSMERE PARK CLUB, L.P., a Delaware limited partnership, : : : | |
| Plaintiff, : : | Civil Action No. 04-1321 (SLR) |
| v. : : | **JURY TRIAL DEMANDED** |
| TOWN OF ELSMERE, a Delaware municipal corporation, ELLIS BLOMQUIST, EUGENE BONEKER, and JOHN GILES, : : : : : : | |
| Defendants. : : | |

**DEFENDANTS' REPLY BRIEF
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

MORRIS, JAMES, HITCHENS & WILLIAMS LLP

Edward M. McNally (#614)
Liza H. Sherman (#4124)
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
(302) 888-6800
emcnally@morrisjames.com
lsherman@morrisjames.com
Attorneys for Defendants Town of Elsmere,
   Ellis Blomquist and Eugene Boneker

Dated: September 23, 2005

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii.

INTRODUCTION TO REPLY ARGUMENT ....................................................................1

ARGUMENT ........................................................................................................................2

I.  A PROCEDURAL DUE PROCESS CLAIM
    DOES NOT INVOLVE A MERITS REVIEW
    OF THE CODE VIOLATION DECISION THE
    PLAINTIFF OPPOSES ..............................................................................................2

    1.  Introduction ....................................................................................................2

    2.  A Reasonable Basis For Declaring An Emergency
        Warrants Proceeding Without A Preliminary Hearing ..................................2

    3.  EPC's Miscellaneous Arguments Have No Merit .........................................3

    4.  Conclusion .....................................................................................................5

II. THE FULL REVIEW PROCESS PROVIDED BY
    DELAWARE LAW MEETS DUE PROCESS .........................................................6

    1.  Introduction ....................................................................................................6

    2.  Elsmere And EPC Agreed The Board Of
        Adjustment Would Give EPC A Hearing ......................................................6

    3.  As A Matter Of Law, EPC Had The Right
        To Both Administrative And Judicial
        Post-Deprivation Review ...............................................................................6

    4.  Conclusion .....................................................................................................8

III. ABSENT PROOF OF BIAS, THE INDIVIDUAL
     DEFENDANTS HAVE QUALIFIED IMMUNITY ................................................9

    1.  Introduction ....................................................................................................9

    2.  There Is No Real Evidence Of Bias ...............................................................9

    3.  Conclusion ...................................................................................................11

CONCLUSION ..................................................................................................................12

# TABLE OF AUTHORITIES

**Case**                                                        **Page**

*Alvin v. Suzuki,*
    227 F.3d 107 (3rd Cir. 2000) .................................................................................6

*Carr v. Town of Dewey Beach,*
    730 F.Supp. 591 (D.Del. 1990).............................................................................7

*Coffey v Cox,*
    218 F.Supp.2d 997 (C.D. Ill. 2002) ....................................................................10

*Flatford v. City of Monroe,*
    17 F.3d 162 (6th Cir. 1994) ...............................................................................2,4

*GB Biosciences Corp. v. Ishihara Sangyo Kaisha, Ltd.,*
    270 F.Supp.2d 476 (D.Del. 2003)........................................................................9

*Grayden v. Rhodes,*
    345 F.3d 1225 (11th Cir. 2003) .........................................................................3,5

*New Haverford Partnership v. Stroot,*
    772 A.2d 792 (Del. 2001) ....................................................................................3

*Northwestern National Insurance Company v. Baltes,*
    15 F.3d 660 (7th Cir. 1994) ...............................................................................10

*United States v. James Daniel Good Real Property,*
    510 U.S. 43 (1993)................................................................................................3

**Statutes and Other Authorities**

1 *Del.C.* § 305 ...............................................................................................................8

22 *Del. C.* § 324 .............................................................................................................7

22 *Del. C.* §§ 328-329....................................................................................................8

Town of Elsmere Ordinance 225-40D.......................................................................7,8

Singer, *Statutes And Statutory Construction* (6th Ed.) § 47.03 ....................................8

## INTRODUCTION TO REPLY ARGUMENT

The Elsmere Park Club, L.P. ("EPC") answering brief ("A.Br. ___") to Defendants' Motion For Summary Judgment makes two basic arguments. First, it claims that there was no true emergency at the Apartments that warranted prompt evacuation before a hearing could be held. (A.Br. 25). That argument asks this Court to review the conclusions of the Division of Public Health of the State of Delaware and then find a *procedural* due process violation if the Court concludes the Division of Public Health was wrong. This is not the proper analysis in a procedural due process case where the focus is on the process used, not the accuracy of the conclusions reached.[1]

Second, EPC argues that it was denied due process because there was no means available to it to have the evacuation order reviewed. (A.Br. 32). That argument as well is wrong because it incorrectly states Delaware law and the ordinances of the Town of Elsmere that provided just such an opportunity for review. Indeed, EPC was offered just such a review, but turned it down, in favor of its losing attempt to secure judicial intervention in the Court of Chancery.

Finally, EPC makes a half-hearted attempt to avoid summary judgment in favor of the Individual Defendants by arguing they acted out of bias. (A.Br. 39). However, EPC has failed to offer any admissible evidence to support that claim and it too should be rejected.

These, and the other, minor arguments of EPC are addressed in this reply brief. Defendants are also filing a supplemental appendix, designated "C___" with this brief.

---

[1] EPC expressly acknowledged that it is not asserting a *substantive* due process claim. (A.Br. 21, fn. 15).

1

**ARGUMENT**

I. **A PROCEDURAL DUE PROCESS CLAIM DOES NOT INVOLVE A MERITS REVIEW OF THE CODE VIOLATION DECISION THE PLAINTIFF OPPOSES**

   1. **Introduction**

   EPC's initial argument against summary judgment is that this Court should review the merits of the Delaware Division of Public Health's decision that a health and safety emergency existed at the Apartments, then decide no such emergency existed and conclude procedural due process was thereby violated. Implicit in this EPC argument is the important concession that the law permits state action without a formal, preliminary hearing, in emergency situations.[2] Thus, EPC is forced to argue there was no such emergency here. For the reasons that follow, that argument fails.

   2. **A Reasonable Basis For Declaring An Emergency Warrants Proceeding Without A Preliminary Hearing**

   In reviewing an official's declaration of an emergency, the courts have consistently focused on what the official knew at the time to see if her decision was "reasonable." If the decision based on facts that are an objectively reasonable basis to act, then the decision is upheld against a due process attack. *Flatford v. City of Monroe*, 17 F.3d 162, 167 (6th Cir. 1994) explains this process clearly:

   > The dispositive issue, therefore, is whether [the code officer's] conclusion that an emergency situation existed was an objectively unreasonable decision in light of the information he then possessed, . . . .[3]

---

[2] The decisions so holding are legend. *See, e.g.* Defendants' Opening Brief ("O.Br.___") at 15-18 for a list of decisions.

[3] The court qualified this test in the context of a summary judgment motion by noting that the evidence should be viewed "in a light most favorable to the" plaintiff. *Id.*

2

This "objectively unreasonable" test that plaintiffs must meet has been widely adopted and is consistent with the analysis in decisions such as *United States v. James Daniel Good Real Property*, 510 U.S. 43 (1993).

Here, the Blomquist decision to order evacuation was plainly reasonable given what he knew at the time. First, the evidence of serious mold contamination cannot be questioned. The Court of Chancery noted how serious this condition appeared. This is not just a case about property interests. Every decision in this area recognizes the "City's interest is of the highest order: protecting the public from dangerous and potentially life-threatening living conditions."[4]

Second, the Division of Pubic Health and the State of Delaware Toxicologist told Blomquist that evacuation was required by those serious environmental problems. Moreover, at the time, *no one* disputed this advice. EPC had instructed its personnel not to talk to the Elsmere officials and EPC does not claim that it initially disputed Dr. Llewellyn's advice.[5] Under these circumstances, Blomquist's decision cannot be called "objectively unreasonable."

Third, while EPC makes a strenuous effort to argue mold infestations are not a serious health concern, that is at best a highly controversial claim. Most importantly, the health concerns from mold infestations were confirmed by Dr. Llewellyn and recognized by the Delaware Supreme Court.[6]

Finally, EPC now argues that whatever was the condition of the Apartment basements that upstairs the actual apartment living units could have remained inhabited while the basements

---

[4] *Grayden v. Rhodes*, 345 F.3d 1225, 1236 (11th Cir. 2003).

[5] *See* Grocki Dep., C370. A few days later, EPC did dispute that advice by filing suit in the Court of Chancery. There, its claim that the Apartments were not seriously contaminated was rejected by the Court of Chancery on the basis that EPC had submitted inaccurate photographs that falsely depicted the condition of the Apartments. (C52-53).

[6] C93-98 to 178-205. *See also, New Haverford Partnership v. Stroot*, 772 A.2d 792 (Del. 2001).

were remediated. (A.Br. 25). That argument fails because it neglects to recognize that the Division of Public Health told Blomquist that the threat of mold migration from the basements to the living units was both real and a reason to require evacuation of those units. (A-135-136). Second guessing that decision is not the proper analysis here under those circumstances.[7]

### 3. EPC's Miscellaneous Arguments Have No Merit

After wrongly asking this Court to do a full merits review of the need for evacuation of the Apartments, EPC makes two miscellaneous arguments that also lack merit. First, EPC argues that the Defendants failed to follow the State Housing Code because no emergency circumstances existed and, therefore, violated due process. (A.Br. 29-32). That is but another argument that despite the contrary evidence, exigent circumstances did not really exist. For the reasons already noted, that argument is not the proper analysis in a *procedural* due process case.[8]

Second, EPC argues that Elsmere should have used some other procedures, such as "medical assessments" or "encapsulation," rather than evacuation. (A.Br. 32-33). No decision has ever held that in an emergency officials must stop and investigate possible alternative remedies to cure housing code violations that are creating a health threat.[9] Again, viewing the record of what Elsmere officials objectively understand, the Division of Pubic Health advised

---

[7] It is noteworthy that even EPC's own consultant concedes that some apartment living units required mold remediation and that his own air sampling showed higher mold content inside the Apartments than in the open air. (C401). As *Flatford* recognized, "we must examine the condition of the structure as a whole, not merely the condition of the [upstairs] unit in isolation of the units directly below." 17 F.3d at 167.

[8] In a particularly outrageous claim, EPC asserts that the residents of the Apartments were neglected by Elsmere. (A.Br. 31). That turns the facts upside down. The record is clear that EPC refused to help its tenants and, instead, Elsmere stepped in to find them alternative housing, to feed them and to otherwise care for the residents. (C271-273).

[9] The decisions EPC cites for its claim that alternative remedies must be explored all involve circumstances where there was no real emergency and there was no need to act quickly.

4

them that encapsulation was not sufficient. (A-136) Certainly, medical reviews of the residents was not feasible either. (C176-177).

Finally, EPC argues that its due process rights were violated by a failure to give it more notice before the Condemnation. (A.Br. at 27).[10] The notice argument was rejected by the Court of Chancery already.[11] The record is clear that Elsmere repeatedly told EPC why it was investigating the Apartments and why they were evacuated. (*See* O.Br. 6-8). That EPC had ample notice of its right to a hearing also cannot be disputed. *See infra* at 6.

### 4. Conclusion

For these reasons, EPC's arguments that due process was violated by proceeding without a hearing are to be rejected.

---

[10] EPC is attempting to fit under the holding of *Grayden* that a *tenant* should be told of a right to appeal an evacuation notice.

[11] Transcript at C60-61.

II. **THE FULL REVIEW PROCESS PROVIDED BY DELAWARE LAW MEETS DUE PROCESS**

1. **Introduction**

In their opening brief, Defendants showed that EPC had the right to a post-deprivation hearing and simply refused to exercise that right. (O.Br. 18-20). In its answer, EPC claims that no such hearing was available to it, based on EPC's interpretation of the Elsmere Code and Delaware law. (A.Br. 34-38). EPC's statutory and code analysis is just wrong.

2. **Elsmere And EPC Agreed The Board Of Adjustment Would Give EPC A Hearing**

The record is undisputed that Elsmere gave EPC the opportunity to present its claims in a post-deprivation hearing. The Town Solicitor specifically told EPC that the hearing would be before the Elsmere "Board of Adjustment" and discussed the procedures to be followed. (A-251). EPC backed out of that hearing, however, but not before stipulating that EPC had the right to "the administrative appeal of the Town's [Condemnation] decisions before the Town's Board of Adjustment. . . " (A-255-256). Having so stipulated, EPC should not be permitted to argue years later that it had no such hearing.[12]

3. **As A Matter Of Law, EPC Had The Right To Both Administrative And Judicial Post-Deprivation Review**

EPC argues that it had no opportunity for a post-deprivation hearing because: (1) the Elsmere BOCA Code refers to a "Board of Building Appeals," not the Elsmere "Board of Adjustment" and no "Building Appeals" entity existed. (A.Br. 33-34) and (2) the Elsmere Board

---

[12] *See, e.g., Alvin v. Suzuki*, 227 F.3d 107, 116 (3rd Cir. 2000) ("[A] state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them.").

6

of Adjustment only deals with zoning issues, not property maintenance disputes. (*Id.* 34-35). These arguments are misplaced.

First, the reference in the Elsmere version of the BOCA Code to the "Board of Building Appeals" is an obvious reference to the "Board of Adjustment." There was no "Board of Building Appeals", but there was (and is) a "Board of Adjustment." Moreover, the jurisdiction of the Board of Adjustment plainly covered appeals from the Code Enforcement official. Ordinance 225-40 plainly states:

> Appeals to the Board of Adjustment may be taken by any person aggrieved or . . . affected by <u>any</u> decision of the Building Official . . . . "

(Emphasis supplied). This implements Delaware law (22 *Del. C.* § 324) which requires all municipalities to have a Board of Adjustment to hear appeals of "any decision of the administrative officer" who enforces municipal codes. That reference in the pre-2003 BOCA Code to the Board of Building Appeals were intended to refer to the Board of Adjustment is further confirmed by the 2003 amendments to the BOCA Code that changed its reference to the "Board of Adjustment."

Second, the Elsmere Board of Adjustment was empowered to give EPC its hearing. The plain wording of Ordinance 225-40 ("any decision") confirms this broad jurisdiction. Indeed, this Court has recognized that under this statutory authority a Board of Adjustment has broad jurisdiction, including for example, appeals over denial of building permits.[13]

EPC argues that the mere fact that the Elsmere Board of Adjustment is provided for by Elsmere's zoning ordinance is enough to limit its jurisdiction to just zoning matters. (A.Br. 34-36). However, that argument violates the settled principle of statutory construction that the title

---

[13] *See, e.g., Carr v. Town of Dewey Beach*, 730 F.Supp. 591 (D.Del. 1990) (Board of Adjustment may decide stop work order).

of a law "may not be used to create an ambiguity when the body of the act itself is clear." Singer, *Statutes And Statutory Construction* (6th Ed.) § 47.03. Indeed, the title is not part of the act. *Id.* Delaware law also recognizes this principle:

> [T]he titles . . . [the statutes] are made for the purpose of convenient reference and orderly arrangement, and no implication, inference or presumption of a legislative construction shall be drawn therefrom.

1 *Del. C.* § 305.[14]

### 4. Conclusion

EPC had a right to a hearing, but chose to go to the Court of Chancery, where it lost. That is all the process that was due it.

---

[14] Note that under Elsmere Ordinance 225-40D:

> An appeal stays all proceedings in furtherance of the action in respect of which the decision appealed from was made, unless the officer or Committee from whom the appeal is taken certifies to the Board of Adjustment after the notice of appeal shall have been filed with him or the Committee, that by reason of facts stated in the certificate a stay would, in his opinion, cause imminent peril to life or property. In such case, proceedings shall not be stayed otherwise than by action of the Board of Adjustment or by a court of competent jurisdiction on application on notice to the officer or Committee from whom the appeal is taken and on due cause shown.

Further, under 22 *Del. C.* §§ 328-329, appeals to the Delaware Superior Court of Board of Adjustment decisions "shall have preference over all other civil actions and proceedings." Thus, EPC had the right to an expedited review of Blomquist's order, both at the Board of Adjustment level and then at the judicial level. EPC's argument that all Board of Adjustment hearings must wait thirty days (A.Br. 35, fn. 32) is plainly wrong.

III. **ABSENT PROOF OF BIAS, THE INDIVIDUAL DEFENDANTS HAVE QUALIFIED IMMUNITY**

1. **Introduction**

To successfully oppose a properly supported motion for summary judgment, the opposing party must produce real evidence that establishes a triable issue. "Accordingly, a mere scintilla of evidence in support of the non-moving party is insufficient for a court to deny summary judgment."[15] In their opening brief, the Individual Defendants showed: (1) the decision to evacuate the Apartments was based on the recommendation of Dr. Llewellyn and his staff, (2) that recommendation appeared reasonable given the extensive mold discovered at the Apartments and (3) the Court of Chancery, after hearing the evidence, found that it was reasonable to order evacuation. We submit that established the Individual Defendants did not act so as to shock the conscience. Thus, they have qualified immunity. (Opening Br. 30-31).

The EPC response to this *prima facie* showing is to argue that the Individual Defendants "did not have a reasonable, good faith belief that an emergency existed." (A.Br. 39). For the reasons that follow, that argument is woefully inadequate to defeat the motion for summary judgment.

2. **There Is No Real Evidence Of Bias**

There is overwhelming evidence that the Elsmere officials acted out of their genuine concern for the Apartment tenants, based on the advice they received from the State of Delaware. Dr. Llewellyn's affidavit and testimony consistently reiterate his advice was to order evacuation. (A-135). Mr. Blomquist, the Town Code Officer, testified unequivocally that was why he

---

[15] *GB Biosciences Corp. v. Ishihara Sangyo Kaisha, Ltd.*, 270 F.Supp.2d 476 (D.Del. 2003).

9

ordered evacuation. (A-219). The Town Manager, Eugene Boneker, also testified that he followed the recommendation of the State in evacuation. (A-219).[16]

Against all this evidence, EPC offers only the offhand, ambiguous remark that its own employee attributes to John Giles. (A.Br. 39). That is insufficient. To begin with, the remark, if actually stated, that "I got them now" is equally susceptible to the interpretation that the mold evidence was so bad it proved EPC had continuously violated the Elsmere Housing Code.[17]

Finally, the so-called "evidence" that EPC relies upon is not admissible evidence to begin with and should be disregarded. For example, it repeatedly cites to the transcript of an "examination" of Regina O'Neill (its employee) by EPC's insurance company. (A.Br. 9 and 39). That "testimony is inadmissible under Rule 32(a) and cannot be considered on summary judgment."[18] Hearsay testimony about what Mr. Giles allegedly said also may not be considered. And Mr. Leibowitz's repetition of pure hearsay from his employees (A.Br. at 4), is equally inadmissible. *Id.*

EPC's arguments of improper motivations are not evidence that will defeat a summary judgment motion. For example, when Elsmere found dangerous mold that Friday, October 4, 2002, it acted promptly. That it did not condemn other buildings over the next weekend when the Division of Public Health personnel were unavailable to verify any mold findings is insufficient to show the Elsmere officials believed that there was no health-threatening mold.

---

[16] This testimony of the immediacy of the need to evacuate fully explains why the Town did not wait around for EPC to come up with a remediation plan, particularly when Dr. Llewellyn testified that any remediation would require evacuation.

[17] At least since 1997 when EPC was advised to monitor the basement apartments for leaks and other damage (A-245), EPC had failed to do so. As its own property manager testified, EPC must have been "dumb and blind" to ignore the problems. (A-225-26).

[18] *Coffey v. Cox*, 218 F.Supp.2d 997, 1005, fn. 10 (C.D.Ill. 2002), citing *Northwestern National Insurance Company v. Baltes*, 15 F.3d 660 (7th Cir. 1994).

Rather, their delay shows their desire to be accurate and they promptly followed up as soon as practicable.[19]

### 3. Conclusion

There is insufficient evidence to warrant denying the Individual Defendants qualified immunity. As a result, summary judgment should be awarded to them.

---

[19] We urge the Court to read the actual papers that EPC cites to in its appendix to support its claims. Repeatedly, those citations are to pages in its appendix that do not support the statements in its brief. *See, e.g.*, the claim that "Giles knew that the inhabited apartment units had to be inspected to "warrant evacuation," citing B-678. (A.Br. 29). Giles actually said exactly the opposite that he believed that evacuation was required based on the work done by Dr. Llewellyn. (B678-679).

11

## CONCLUSION

For the reasons set forth here, Defendants' summary judgment motion should be granted.

MORRIS, JAMES, HITCHENS & WILLIAMS LLP

*/s/ Edward M. McNally*
_____
Edward M. McNally (#614)
Liza H. Sherman (#4124)
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
(302) 888-6800
*emcnally@morrisjames.com*
*lsherman@morrisjames.com*
Attorneys for Defendants Town of Elsmere,
  Ellis Blomquist and Eugene Boneker

Dated: September 23, 2005

1291305/1

12

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2005, I electronically filed Defendants' Reply Brief in Support of Their Motion for Summary Judgment with the Clerk of Court using CM/ECF, which will send notification of such filing to the following:

>David S. Eagle, Esquire
>Klehr, Harrison, Harvey,
>Branzburg & Ellers LLP
>919 Market Street, Suite 1000
>Wilmington, DE 19801
>Attorneys for Plaintiff Elsmere Park Club, L.P.

>Edward M. McNally (#614)
>Liza H. Sherman (#4124)
>Morris, James, Hitchens & Williams LLP
>222 Delaware Avenue, 10th Floor
>Wilmington, DE 19801
>(302) 888-6800
>emcnally@morrisjames.com
>lsherman@morrisjames.com
>Attorneys for Defendants Town of Elsmere,
>    Ellis Blomquist and Eugene Boneker

Dated: September 23, 2005

1291652/1