# EXHIBIT A

FROM KLEHR HARRISON                                (MON)10.24'05 11:26/ST.11:25/NO.4862034842 P 2

Sep 29 2005 11:22AM   Wilcox & Fetzer, LTD       (302)655-0497                    p.3

ATTACH TO DEPOSITION OF: *Larry N. Johnson*
DATE TAKEN: *September 14, 2005*
IN THE MATTER OF: *Elsmere Park Club v Town of Elsmere*

### ERRATA SHEET

**INSTRUCTIONS:** After reading the transcript of your deposition, please note any change or correction and the reason therefor on this sheet. **Do not make any marks or notations on the transcript itself.** Rule 30(e) governing this procedure is enclosed. Please sign and date this errata sheet and return it to our office at the address indicated below. Thank you.

| PAGE | LINE  | CHANGE OR CORRECTION AND REASON     |
|------|-------|--------------------------------------|
| 50   | 16-19 | See attached Exhibit A Correction 1 |
| 51   | 2     | See attached Exhibit A Correction 2 |
|      |       |                                      |
|      |       |                                      |
|      |       |                                      |
|      |       |                                      |
|      |       |                                      |
|      |       |                                      |
|      |       |                                      |
|      |       |                                      |

I have read the foregoing transcript of my deposition and, except for any corrections or changes noted above, I hereby subscribe to the transcript as an accurate record of the statements made by me.

DATED: *10/21/05*     *Larry N. Johnson*
                         (Signature of Deponent)

RETURN TO: WILCOX AND FETZER, LTD.
           1330 King Street
           Wilmington, DE 19801

Errata Exhibit A

Correction 1:

Page 50, lines 16-19--change the answer to: "Yes. We prepared a remediation plan and cost estimate in November 2002 in which we recommended removing all of the wallboard in all of the basements. Once you get on site and you have better lighting in the basement, we assumed that it would be more practical, again, to remove more than the mold impacted material." The reason for this change is that on further reflection I remembered that there was a separate, earlier recommendation to remove all of the wallboard in all of the basements. Also, the question implied that the basements were addressed by Sovereign's October 8, 2003 report, but they were not. The change reflects the fact that the October 8, 2003 report addressed only the upstairs apartments, not the basements.

Correction 2:

Page 51, line 2--change the answer to: "Yes, in order to develop the lowest possible cost estimate, except that in this case better lighting was not needed for the remedial cost estimate we prepared in November, 2002 because for this November, 2002 estimate we assumed that all drywall would be removed." The reason for the change is to clarify that we did an estimate of the cost to remediate the basement in November, 2002 based on removal of all drywall, and we therefore did not need lighting to determine a cost estimate for this work.

_____         10/21/05
Larry W. Johnson                         Date

| Elsmere Park Club, L.P. | v. | Town of Elsmere, et al. |
|---|---|---|
| Larry W. Johnson | C.A. # 04-1321 | September 14, 2005 |

Page 50

1  Q. Now, having taken a few minutes, are you still
2  comfortable with your prior answer that none of the
3  basement apartments required a Level IV remediation in
4  your estimate?
5  A. Based on the square footage, yes. But from a
6  practical standpoint, since they are unoccupied, we may
7  have recommended all of the wallboard be removed, just
8  from a practical standpoint, not from a mold remediation
9  standpoint, but just because it has been water damaged
10 and there was the potential for mold growth.
11 Q. Let me see if I got that. You say you may have
12 recommended. Was there a separate recommendation that
13 you made to the owner other than this remediation report
14 about how to address the conditions at Elsmere Park
15 Apartments?
16 A. No. But once you get on site and you have
17 better lighting in the basement, it may be more
18 practical, again, to remove more than the mold impacted
19 material.
20 Q. Okay. So that if we were really going to sit
21 down and do a true cost estimate of the remediation work
22 and any other work that would have been appropriate
23 because of other damage, what would have to be done is a
24 basement by basement examination under good light and a

Page 51

1  proper set of calculations, correct?
2  A. Yes.
3  Q. All right. Now, going back to page, what I'll
4  call page 6 of your remediation plan, which is Exhibit 5,
5  sir, I'm going to show you the page, because the page
6  number -- it's the page that begins "mold abatement."
7  A. Yes.
8  Q. Okay. It begins with the sentence, "We have
9  assumed that the apartments shall be unoccupied for the
10 remediation to facilitate efficient work practices." Do
11 you see that?
12 A. Yes.
13 Q. Does that reference refer to all of the
14 apartments, the basement apartments, or just the
15 apartments above the basements that were occupied prior
16 to October of 2002?
17 A. It refers to all of the apartments, but in some
18 cases where there's very little remediation it could be
19 unoccupied for part of a day.
20 Q. Let's go to an example, so that we are clear.
21 Turn to attachment number 1, if you would, please. I
22 want to use the example of Cypress Street of building
23 1402. Do you see that one, sir?
24 A. Yes.

Page 52

1  Q. That says basically the remediation will be
2  limited to the basement apartment, correct?
3  A. Yes.
4  Q. So if you were under your plan going to do
5  remediation for building 1402, if there had been, prior
6  to your work, people living in 1402, which, if any, of
7  the apartments would have to be unoccupied before your
8  work began?
9  A. If 1402 were occupied?
10 Q. If the building was occupied, other than -- none
11 of the basements are occupied, so forget about that
12 aspect of it. 1402, you go in to do your plan, all the
13 apartments except the basement are occupied when you show
14 up.
15 A. Okay.
16 Q. Would any of those apartments have to be vacated
17 even for a short period of time in connection with that
18 remediation of building 1402?
19 A. The basement of 1402?
20 Q. Correct.
21 A. No.
22 Q. You paused. Why did you pause? Is there some
23 qualification to your answer that you wanted to add?
24 A. No.

Page 53

1  Q. The reason for your answer is that under your
2  plan you were able to, in a sense, seal off the basement
3  from the rest of the building, so people could continue
4  to come and go, correct?
5  A. To seal as best as practical and establish an
6  air pressure differential, yes.
7  Q. You say "as best as practical." I guess that
8  tells me that it's not a true complete seal off. Isn't
9  that right?
10 A. That's correct.
11 Q. And there is some possibility of air going from
12 the basements during the remediation process, if only
13 because people have to come and go from the basement, the
14 workers, for example?
15 A. Right. And the remediation process is in itself
16 a dirty process that generates extensive amounts of dust
17 and possibly mold spores. That's why we place it under
18 pressure differential, to ensure that it doesn't get
19 through any, through any potential pathways.
20 Q. Let's turn, to complete the circle, to another
21 unit on that chart that you have in front of you. Let's
22 start with 1400 Cypress. Under 1400 Cypress the plan
23 involved remediating the mold in the basement and doing
24 some remediation work in unit number 4, correct?

14 (Pages 50 to 53)