# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ELSMERE PARK CLUB, L.P., a<br>Delaware limited partnership, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-1321-SLR |
| | ) | |
| TOWN OF ELSMERE, a Delaware<br>Municipal corporation, | ) | |
| ELLIS BLOMQUIST, EUGENE BONEKER,<br>and JOHN GILES, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) | |

### AFFIRMATION OF COUNSEL REGARDING PLAINTIFF'S
### PRODUCTION OF CERTAIN DOCUMENTS TO DEFENDANTS

| | |
|---|---|
| STATE OF PENNSYLVANIA | ) |
| | ) SS. |
| PHILADELPHIA COUNTY | ) |

The undersigned co-counsel for plaintiff, hereby affirms under oath and subject to penalty of perjury that:

1.      In the instant action and several other state court proceedings involving a similar factual background, numerous documents have been produced by the Plaintiff Elsmere Park Club, L.P. ("EPC" or "Plaintiff"), the former owner of the Elsmere Park Apartments (the "Apartments") located in Elsmere, Delaware, to the Defendant Town of Elsmere (the "Town").

2.      In November 2002, Plaintiff submitted to the Town a proposed plan and cost estimate for removing mold from the Apartments (the "Plan") in order to meet the Town's prerequisites for tenants to be allowed to return to live in the complex. This Plan, contained in two documents entitled "Technical Scope for the Removal of Mold Impacted and Asbestos-Containing Materials" and "Preliminary Cost Estimate: Mold Remediation", was developed by

Plaintiff's expert Larry W. Johnson ("Johnson") and his environmental firm. The Plan included a scope of work and a cost estimate to perform the work. The State and the Town ultimately approved the Plan in February 2003.

3.    In the Plan, Mr. Johnson identified the cost to remove mold and perform other cleaning as $231,200. This dollar figure was redacted from the Plan when it was first produced to the Defendants in 2002.

4.    In the related State lawsuit entitled <u>Manuel v. Elsmere Park Club, L.P. et al.</u>, Delaware Superior Court C.A. No. 02C-10-212 (JRJ), a case now settled in which tenants sued Plaintiff for property and other damages attributable to the Defendant Town's condemnation due to alleged mold at the Apartments, and in which the Town was a third-party defendant, Plaintiff produced to the Defendant Town documents which included the unredacted Plan (i.e., it contained Mr. Johnson's cost to remove mold and other materials from the property).

5.    In particular, on or about December 8, 2004, representatives of the Defendant Town reviewed documents Plaintiff made available to them. The Defendant representatives identified the documents that they wanted to have copied. Plaintiff had these documents copied, Bates-numbered and delivered to the Town within a few days after December 8, 2004. A non-redacted version of the Plan, including Johnson's dollar figure for the cost of the mold removal and related work, was one of the documents Plaintiff provided to the Defendant Town at this time.

6.    Attached hereto as Exhibit 1 is a true and correct copy of the Plan that was stamped with Bates numbers and produced to the Town in December 2004 (Bates No. EPA

DEL1 62732-1

001697 through EPA 001720[1]).  Bates No. EPA 001700 is the specific page that contains

Johnson's original cost amount.

      7.      During discovery in this federal due process case, Defendants asked Plaintiff to

produce documents "regarding estimates received by EPC after October 1, 2002 regarding

remediation of the mold at the Apartments."  Plaintiff EPC identified to the Defendants all

documents that Plaintiff previously produced to the Defendant Town in the Manuel State court

case.  Plaintiff specifically directed Defendants to the November 2002 Plan.[2]

Dated:  October 26, 2005         KLEHR, HARRISON, HARVEY, BRANZBURG
                                    & ELLERS LLP

                          By:         _____
                                 Bryan D. Weiss, Esq. (PA Bar No. 85926)
                               260 South Broad Street
                               Philadelphia, PA  19102-5003
                               Telephone: (215) 568-6060
                               bweiss@klehr.com
                               *Attorneys for Plaintiff*

AFFIRMED TO AND SUBSCRIBED before me this 26th day of October, 2005.

                                    _____
                                    Notary Public

My Commission expires: _1/22/2008_         MICHELLE R. MORRIS
                          COMMONWEALTH OF PENNSYLVANIA
                          COMMISSIONER OF DEEDS
                          COMMISSION EXPIRES JAN. 22, 2008

---

[1] The Bates-stamped, non-redacted version of the Plan is also included in the Appendix to Plaintiff's Answering Brief in Opposition to Defendants' Motion in Limine to Exclude the Expert Report and Testimony of David J. Wilk at D-1 through D-24 (D.I. # 77), and Defendants used it as an exhibit at the deposition of Elliot Leibowitz on August 17, 2005.

[2] See Plaintiff's Response to Defendants' First Request for Production of Documents that were served on July 19, 2005 at Response No. 5 (Attached hereto as Exhibit 2; see also Notice of Service D.I. # 29 included with Exhibit 2).

DEL1 62732-1

# TAB 1

to

Exh. B

11/25/2002  17:06    6182658687          RT ENVIRONMENTAL          PAGE  02

1.          PRELIMINARY COST ESTIMATE

2.                MOLD REMEDIATION

3.    OVERVIEW

The Fenwick Park Apartments are located in the Town of Elsmere, Delaware. The complex consists of 38 apartment buildings with four apartments per building. As originally constructed, each building also contained a fifth apartment that was partially below grade. A flood in 1989, an possibly an earlier flood in 1966, flooded these basement apartments. The Town prevented habitation of all of these partially sub-grade units after the 1989 flood. Later, in approximately 1996, the Town required the owner to seal the windows of the basement apartments with masonry and to fasten plywood over the doors of these apartments.

In addition to the water damage from the floods, there have been a number of other instances of routine water damage from roof and window leaks, air conditioner condensate damage and plumbing leaks. A number of the plumbing leaks appear to have damaged the basements.

Building management reports that inspections in the mid-1990s, and again in the late 1990s, addressed concerns regarding existing water damage. Accordingly, it is possible that all impacts presently observed in the buildings are attributable to damage that has occurred in the last few years.



DEPOSITION
EXHIBIT
#17
8-17-05

D0001

### Water & Moisture Damage

Whenever building materials become water-damaged and go untreated, the possibility of mold growth on or within the materials is high. The current, accepted means of dealing with water-damaged building materials is to remove and replace damaged wallboard and to clean and dry any other materials such as carpet, wood structural members, masonry and non-porous furnishings within 24 to 48 hours.

### 4.    BUILDING ASSESSMENTS

An initial assessment of each building was conducted to determine its fitness for occupancy, the need for maintenance, the need for mold remediation and the potential for occupant exposure to elevated airborne mold spores.

### Visual Inspections

Air monitoring, visual inspections and photo documentation were conducted on all apartments and in the former basement apartments. The visual inspection was used to determine the extent of surface water damage or area covered by surface mold contamination. This information was used to determine the means by which the damage would be remedied. The mold-damaged areas were ranked for remediation using the New York City Department of Health Guidelines on Assessment and Remediation of Fungi in Indoor Environments.

### Individual Building Histories

Maintenance records have been reviewed to ascertain where water damage, other than the two floods mentioned, might have impacted the building materials in any of the apartments. As noted above, additional sources of water damage include roof leaks, plumbing leaks and air conditioner condensate.

D0002

5.    **REMEDIATION**

Based on the work completed, we have assumed that all buildings will have the basements remediated.  In addition to the mold remediation, we have assumed that each basement will also have the vinyl asbestos tile (VAT) removed as a result of the water damage.  (These assumptions are subject to modification if additional investigation establishes no water damage to the drywall and or floors from the prior floods, leaks, etc.)  There could be a reduction in the cost of remediation by awarding the work to one contractor who can complete both the mold remediation and the asbestos abatement work.

Additional remediation is recommended in a limited number of above-grade apartment units, based on observed water damage or air sampling results.  The remediation will consist either of (i) HEPA vacuuming in units with no observed water damage but air sampling results which exceed results from outside the unit and which indicate a potential source in the basement or (ii) limited removal and replacement of wallboard with apparent water damage.  In the latter case, after removal and prior to replacement of wallboard, the area behind the drywall will be inspected to determine whether any additional impacts are present, and if so, the appropriate response.  Any damage behind the wallboard is not known at present, and therefore is not included in this cost estimate.  One building had a mold type which is associated with a wood source rather than a drywall source.  The wood in that building will be investigated during remediation to determine potential impacts to the wood.  In addition, certain bathrooms and kitchens have mold damage.  All buildings will be subject to clearance sampling.  Additional physical inspections and/or remediation may be needed if clearance is not achieved.  The additional cost of this is not included below.  A list of the buildings and apartments are listed in Attachment I.

D0003

A preliminary cost estimate, based on what has been learned to date is as follows:

| | |
|---|---|
| -Basements(ACM & Mold)-38 | $152,200 |
| -Bathrooms(Mold)-29 | 28,800 |
| -Kitchens(Mold)-6 | 5,600 |
| Subtotal: | $186,600 |
| -Inspection, Monitoring & Reporting | $44,600 |
| **TOTAL ESTIMATE** | **$ 231,200** |

Note carefully that the above do not include restoration costs for replacement of building components after remediation is completed nor any structural repairs found to be needed when walls or ceilings are opened up. In addition, it is essential that all spaces continue to be heated and maintained without water leakage, otherwise, costs will increase due to expanded remedial requirements.

D0004

702810210- 11/25/2002

# ATTACHMENT 1
## LIST OF BUILDINGS AND APARTMENTS

D0005

702510210- 11/25/2002

11/25/2002  17:06    6102650567    RT ENVIRONMENTAL    PAGE  07

| STREET | APARTMENT(s) THAT NEED REMEDIATED |
|---|---|
| | BUILDING # & UNIT(s) |
| CYPRESS | 1400 basement, unit 4 |
| | 1401 basement, unit 4 |
| | 1402 basement |
| | 1403 basement |
| | 1404 basement |
| | 1405 basement, unit 2 & 5 |
| | 1406 basement |
| | 1407 basement |
| | 1408 basement, unit 2,3,4 & 5 |
| | 1409 basement |
| | 1411 basement, unit 5 |
| | 1413 basement, unit 5 |
| | 1415 basement |
| | 1417 basement |
| | 1419 basement |
| | 1421 basement |
| | 1423 basement |
| | |
| MAPLE | 1349 basement, unit 3 |
| | 1351 basement |
| | 1353 basement, unit 2,3,4 & 5 |
| | 1355 basement, unit 2,3,4 & 5 |
| | 1357 basement, unit 2 |
| | 1401 basement |
| | 1403 basement |
| | 1405 basement, unit 4 |
| | 1407 basement, unit 4 |
| | 1409 basement |
| | 1501 basement |
| | 1503 basement |
| | 1505 basement |
| | 1507 basement |
| | 1509 basement |
| | 1511 basement, unit 2 & 3 |
| | |
| SYCAMORE | 1400 basement |
| | 1401 basement, unit 3 |
| | 1403 basement, unit 2 |
| | 1405 basement |
| | 1407 basement, unit 5 |

D0006

11/25/2002  17:06   6102650507          RT ENVIRONMENTAL                    PAGE  08

# Elsmere Park Apartments



D0007

11/25/2002  17:08    6102650687              RT ENVIRONMENTAL                    PAGE  01

# **RT** Environmental Services, Inc.

## TELECOMMUNICATION COVER SHEET

PROJECT # _Z628/02_

TOTAL NUMBER OF PAGES: _17_ INCLUDING THIS COVER SHEET.

TO: _Doug Schleicher Esq_

COMPANY: _____

LOCATION: _____

FAX PHONE# _215- 568-6603_

FROM: _GDM_

DATE: _6/25_        TIME OF TRANSMISSION: _____

---

_____ ORIGINAL WILL FOLLOW VIA:
       _____ U.S. MAIL
       _____ OVERNIGHT PACKAGE
       _____ HAND DELIVERY
_____ ORIGINAL WILL NOT FOLLOW

THESE ARE TRANSMITTED AS CHECKED BELOW
_____ FOR APPROVAL
_____ FOR YOUR USE _____ FOR BIDS DUE
_____ FOR REVIEW AND COMMENT BY_____
_____ AS REQUESTED
_____ OTHER

THIS FAX IS CONFIDENTIAL AND IS INTENDED
ONLY FOR THE PERSON TO WHOM IT IS ADDRESSED.
IF YOU RECEIVED THIS IN ERROR, OR DID NOT
RECEIVE ALL OF THE PAGES, PLEASE CALL 800-725-
0593, EXT. 10, AS SOON AS POSSIBLE.  PLEASE
RETURN AN INCORRECTLY SENT FAX BY FIRST CLASS
MAIL.

### RT's SCOPE OF SERVICES
- REAL ESTATE ENVIRONMENTAL
    SITE ASSESSMENTS
- UNDERGROUND & ABOVE GROUND
    TANKS
- REMEDIAL ACTION
- RISK BASED CORRECTIVE ACTION
- BROWNFIELDS SITES
- ENVIRONMENTAL ENGINEERING
- EXPERT WITNESS SERVICES
- HEALTH & SAFETY SERVICES
- ASBESTOS & LEAD BASED PAINT
- RISK ASSESSMENTS
- AIR AND WASTEWATER
- HYDROGEOLOGICAL STUDIES
- PA SAFE FILL
- ANTHRAX & EMERGENCY RESPONSE
- NJ ISRA; PA LAND RECYCLING
- INDOOR AIR & MOLD
- CONTINGENCY PLANS

MESSAGE:

F:\RT Admin (9004)\9004-00\FAX COVER SHEET.wpd

D0008



215 West Church Road ■ King of Prussia, PA 19406 ■ (610) 265-1510 ■ Fax: (610) 265-0687
E-Mail RTENV@AOL.COM ■ Web Address http://www.RTENV.COM

11/25/2002  17:08   6102650597                RT ENVIRONMENTAL                    PAGE  02



# TECHNICAL SCOPE
# FOR THE REMOVAL OF MOLD IMPACTED AND
# ASBESTOS-CONTAINING MATERIALS

## FOR

## FENWICK PARK APARTMENTS
## ELSMERE, DELAWARE

### PREPARED FOR:

### ELSMERE PARK CLUB, L.P.

### PREPARED BY:

## RT ENVIRONMENTAL SERVICES, INC.
## AND
## SOVEREIGN ENVIRONMENTAL GROUP, INC.

## NOVEMBER 2002

# RT Environmental Services, Inc.

*D0009*

EPA 001705

## DESCRIPTION OF WORK

### VINYL ASBESTOS TILE ABATEMENT

This project will involve the abatement by removal of damaged vinyl asbestos tile in basement apartments at the Fenwick Park Apartments in Elsmere, DE.

- 700 square feet (present estimate) of vinyl asbestos tile (VAT) located in the basement apartments of each building.

The project involves the abatement by removal of the vinyl asbestos tile materials which are in poor condition in basement apartment units or which need to be abated by removal to facilitate mold abatement activities.

The Work will be performed in full accordance with all relevant Federal, State, and Local laws and regulations, including but not limited to the NESHAP provisions of the Clean Air Act, Delaware laws and regulations governing asbestos abatement work, all Federal OSHA asbestos and construction safety standards.

## DESCRIPTION OF WORK – MOLD ABATEMENT

This section describes areas where mold remediation work is to be performed and lists areas which will receive special protection during the remediation work. This work will be conducted following all Federal, State and Local ordinances, regulations and rules pertaining to mold, including its storage, transportation and disposal. This project will be conducted in accordance with the New York City Department of Health Guidelines.

The work will include:

- Use of vacuum cleaners equipped with HEPA filters to collect all debris and dust;

- Wet methods, or wetting agents, to control employee exposures during mold handling, mixing, removal, cutting, application, and cleanup; and

- Prompt clean up and disposal of wastes and debris contaminated with mold in leak-tight containers.

D0010

Remediation shall include removal of mold-containing building materials in the following matter:

- Thirty-eight (38) basement apartments shall be remediated using Level III procedures specified herein.

- Sixteen (16) upper floor apartments shall be remediated using Level II procedures specified herein.

## DESCRIPTION OF WORK – SEWAGE RELEASE ABATEMENT

Certain areas of the complex (including 1409 Maple & 1357 Maple) are impacted by releases of wastewater from leaking plumbing fixtures and sewer piping. Visual inspection of the apartments as of early October 2002 did not reveal any areas of wastewater releases from sanitary wastewater fixtures and piping; all leakage found was from kitchen and bathroom sink fixtures. Leakage found was into the same areas scheduled for mold and/or asbestos abatement. Should any new areas be found during the execution of the work where sanitary wastewater releases impacted building materials, causing a potential hazard, proper work practices will be implemented during execution of the removal of any and all sewage release damaged building materials.

To assure maximum control of mold spores during removal of building materials, a "top down" sequence of abatement will be used. Within each building, materials shall be removed and abated from the uppermost units, to the first floor units to the basement. The reason for this protocol is to maintain negative pressure air control, and the ability to segregate work areas as the work proceeds and building materials including wall board, insulation, wood framing or other building materials are removed for abatement purposes. If any conditions are found after building materials are removed, the ENVIRONMENTAL CONSULTANT shall be notified and shall issue instructions on the scope of work prior to any wood removal.

Additional work sequence provisions include the following:

- Movable objects shall be removed from the work area prior to initiation of abatement activities.

   –    Prepare and isolate the WORK area and establish necessary barriers, decon facilities and waste staging areas to achieve full containment.

   –    Perform removal utilizing required full containment procedures.

Background, project, clearance sampling, and final inspection shall be provided by ENVIRONMENTAL CONSULTANT.

Final tear down of critical barriers and isolations barriers will take place only upon approval of ENVIRONMENTAL CONSULTANT.

## REMOVAL DETAILS

A.   Asbestos-Containing Material Abatement:

Removal of asbestos-containing material within the basement apartment units shall be performed using full-containment techniques and an attached 3-stage decontamination unit where possible.  Negative air shall be provided using HEPA (High Efficiency Particulate Air) filtration systems and discharged to the outside of the building.  The work area shall be prepared and engineering controls installed in accordance with Section 2 of the Technical Specifications.

B.   All visual inspections and final clearance air sampling shall be conducted by the ENVIRONMENTAL CONSULTANT.

## AIR SAMPLING METHODOLOGY

After the containment area passes the final visual inspections, final clearance air samples shall be collected.

The sampling, analysis, and release criteria for final clearance shall be in accordance with the phase contrast microscopy (PCM NIOSH 7400) protocol, or TEM if required locally or considered appropriate give the project type.

D0012

## MOLD ABATEMENT

We have assumed that the apartments shall be unoccupied for the remediation to facilitate efficient work practices.

Appropriate caution signs shall be posted at the entrance to each work area and the waste storage area at all times during the mold project. A work area is an entire building, floor, or a portion of a floor where work is being conducted at that time.

An enclosure shall be constructed around the controlled area. The enclosures shall be maintained under negative pressure using HEPA-filtered air filtration device (AFD). AFD's shall be exhausted to the outside of the building.

Stationary items shall be decontaminated if visibly mold-contaminated by wet wiping and/or HEPA vacuuming. All movable objects shall be relocated from the controlled area.

Disable HVAC or any other system bringing air into, out of, or through the Work Area. Disable system by lockout, disconnecting wires, removing circuit breakers by lockable switch and/or other positive means that will prevent accidental premature restarting of equipment.

## WATER DAMAGE / MOLD ABATEMENT

In all situations, the underlying cause of water accumulation will be rectified to the extent possible. Any initial water infiltration shall be stopped and cleaned immediately. The ENVIRONMENTAL CONSULTANT shall be notified of any apparent needs for building repairs, which become apparent during the course of the work.

## LEVELS

Five different levels of abatement are described herein. The size of the area impacted by fungal contamination determines the level. The levels below are based on professional judgment and practicality. The goal of remediation is to remove or clean mold impacted materials in a way that prevents the emission of fungi and dust contaminated with fungi from leaving a work area and entering an occupied or non-abatement area, while protecting the health of workers performing the abatement.

D0013

The listed remediation levels and methods are not meant to exclude other similarly effective methods. Any changes to the remediation methods listed in these guidelines, however, should be carefully considered prior to implementation. Non-porous (e.g., metals, glass, and hard plastics) and semi-porous (e.g., wood, and concrete) materials that are structurally sound and are visibly moldy can be cleaned and reused. Cleaning shall be completed using a detergent solution. Porous materials such as ceiling tiles and insulation, and wallboards with more than a small area of contamination shall be removed and discarded. Porous materials (e.g., wallboard, and fabrics) that can be cleaned, can be reused, but shall be discarded when possible.

## MATERIAL & BIOCIDES

All materials to be reused should be dry and visibly free from mold. The use of gaseous, vapor-phase, or aerosolized biocides for remedial purposes is not recommended. Any biocides proposed to be used by the CONTRACTOR shall be approved in advance by the ENVIRONMENTAL CONSULTANT.

## LEVEL I: SMALL ISOLATED AREAS (10 sq. ft or less) - e.g., ceiling tiles, small areas on walls.

Persons performing this work shall have training performed as part of a program to comply with the requirements of the OSHA Hazard Communication Standard (29 CFR 1910.1200).

Respiratory protection (e.g., N95 disposable respirator), in accordance with the OSHA respiratory protection standard (29 CFR 1910.134), is recommended. Gloves and eye protection are required.

The work area shall be unoccupied.

Containment of the work area is not necessary. Dust suppression methods, such as misting (not soaking) surfaces prior to remediation, are recommended.

Contaminated materials that cannot be cleaned shall be removed from the building in a sealed plastic bag.

The work area and areas used by remedial workers for egress shall be cleaned with a damp cloth and/or mop and a detergent solution.

All areas should be left dry and visibly free from contamination and debris.

## LEVEL II: MID-SIZED ISOLATED AREAS (10 - 30 sq. ft.) - e.g., individual wallboard panels.

Persons performing the work shall have training performed as part of a program to
comply with the requirements of the OSHA Hazard Communication Standard (29 CFR 1910.1200).

Respiratory protection (e.g., N95 disposable respirator), in accordance with the
OSHA respiratory protection standard (29 CFR 1910.134), is recommended.  Gloves and eye
protection are required.

The work area shall be unoccupied.

The work area shall be covered with a plastic sheet(s) and sealed with tape before
remediation, to contain dust/debris.

Dust suppression methods, such as misting (not soaking) surfaces prior to
remediation, are required.

Contaminated materials that cannot be cleaned shall be removed from the building
in sealed plastic bags.

The work area and areas used by remedial workers for egress should be HEPA vacuumed (a
vacuum equipped with a High-Efficiency Particulate Air filter) and cleaned with a damp cloth and/or
mop and a detergent solution.

All areas should be left dry and visibly free from contamination and debris.

## LEVEL III: LARGE ISOLATED AREAS (30 - 100 square feet) - e.g., several wallboard panels.

The following procedures are required:

Personnel trained in the handling of hazardous materials and equipped with respiratory protection,
(e.g., N95 disposable respirator), in accordance with the OSHA respiratory protection standard (29
CFR 1910.134), is recommended.  Gloves and eye protection are required.

D0015

The work area and areas directly adjacent shall be covered with a plastic sheet(s) and taped before remediation, to contain dust/debris.

Seal ventilation ducts/grills in the work area and areas directly adjacent with plastic sheeting.

The work area and areas directly adjacent shall be unoccupied.

Dust suppression methods, such as misting (not soaking) surfaces prior to remediation, are required.

Contaminated materials that cannot be cleaned shall be removed from the building in sealed plastic bags.

The work area and surrounding areas shall be HEPA vacuumed and cleaned with a damp cloth and/or mop and a detergent solution.

All areas should be left dry and visibly free from contamination and debris.

If abatement procedures are expected to generate a lot of dust (e.g., abrasive cleaning of contaminated surfaces, demolition of plaster walls) or the visible concentration of the fungi is heavy (blanket coverage as opposed to patchy), then remediation procedures for Level IV shall be followed.

## LEVEL IV: EXTENSIVE CONTAMINATION (greater than 100 contiguous square feet in an area)

The following procedures are required:

Personnel trained in the handling of hazardous materials equipped with:

- Full-face respirators with high efficiency particulate air (HEPA) cartridges

- Disposable protective clothing covering both head and shoes

- Gloves

D0016

EPA 001712

Containment of the affected area:

- Complete isolation of work area from occupied spaces using plastic sheeting sealed with duct tape (including ventilation ducts/grills, fixtures, and any other openings)

- The use of an exhaust fan with a HEPA filter to generate negative pressurization

- Airlocks and decontamination room.

Contaminated materials that cannot be cleaned shall be removed from the building in sealed plastic bags. The outside of the bags shall be cleaned with a damp cloth and a detergent solution or HEPA vacuumed in the decontamination chamber prior to their transport to uncontaminated areas of the premises.

The contained area and decontamination room shall be HEPA vacuumed and cleaned with a damp cloth and/or mop with a detergent solution and be visibly clean prior to the removal of isolation barriers.

Air monitoring shall be conducted prior to reoccupancy by the ENVIRONMENTAL CONSULTANT to determine if the area is fit to reoccupy.

## LEVEL V: REMEDIATION OF HVAC SYSTEMS (A Small Isolated Area of Contamination {<10 square feet} in the HVAC System

Persons performing this work shall have training performed as part of a program to comply with the requirements of the OSHA Hazard Communication Standard (29 CFR 1910.1200).

Respiratory protection (e.g., N95 disposable respirator), in accordance with the OSHA respiratory protection standard (29 CFR 1910.134), is recommended. Gloves and eye protection should be worn.

The HVAC system shall be shut down prior to any remedial activities.

The work area shall be covered with a plastic sheet(s) and sealed with tape before remediation, to contain dust/debris.

D0017

EPA  001713

Dust suppression methods, such as misting (not soaking) surfaces prior to remediation, are required.

Growth supporting materials that are contaminated, such as the paper on the insulation of interior lined ducts and filters, shall be removed. Other contaminated materials that cannot be cleaned shall be removed in sealed plastic bags.

The work area and areas immediately surrounding the work area shall be HEPA vacuumed and cleaned with a damp cloth and/or mop and a detergent solution.

All areas shall be left dry and visibly free from contamination and debris.

Biocides may be recommended by HVAC manufacturers for use with HVAC components, such as, cooling coils and condensation pans. HVAC manufacturers shall be consulted with respect to the products they recommend for use in their systems.

Areas of Contamination (>10 square feet) in the HVAC System
The following procedures are recommended:

-Personnel trained in the handling of hazardous materials equipped with:

   -Respiratory protection (e.g., N95 disposable respirator), in accordance with the OSHA respiratory protection standard (29 CFR 1910.134), is recommended.

   -Gloves and eye protection

   -Full-face respirators with HEPA cartridges and disposable protective clothing covering both head and shoes should be worn if contamination is greater than 30 square feet.

The HVAC system shall be shut down prior to any remedial activities.

Containment of the affected area:

D0018

-Complete isolation of work area from the other areas of the HVAC system using plastic sheeting sealed with duct tape.

-The use of an exhaust fan with a HEPA filter to generate negative pressurization.

-Airlocks and decontamination room if contamination is greater than 30 square feet.

-Growth supporting materials that are contaminated, such as the paper on the insulation of interior lined ducts and filters, shall be removed.  Other contaminated materials that cannot be cleaned shall be removed in sealed plastic bags.  When a decontamination chamber is present, the outside of the bags shall be cleaned with a damp cloth and a detergent solution or HEPA vacuumed prior to their transport to uncontaminated areas of the building.

-The contained area and decontamination room shall be HEPA vacuumed and cleaned with a damp cloth and/or mop and a detergent solution prior to the removal of isolation barriers.

-All areas shall be left dry and visibly free from contamination and debris.

-Air monitoring shall be conducted by the ENVIRONMENTAL CONSULTANT prior to re-occupancy with the HVAC system in operation to determine if the area(s) served by the system are fit to reoccupy.

-Biocides may be recommended by HVAC manufacturers for use with HVAC components, such as, cooling coils and condensation pans.  HVAC manufacturers shall be consulted for the products they recommend for use in their systems.

Mold waste shall be deposited as soon as practical at a regulated waste disposal site.

D0019

EPA  001715

# ATTACHMENT 1
## SCHEDULE OF MOLD ABATEMENT/REMEDIATION BY BUILDING

D0020

EPA   001716

| STREET | APARTMENT(s) THAT NEED REMEDIATED |
|---|---|
|  | BUILDING # & UNIT(s) |
| CYPRESS | 1400 basement, unit 4 |
|  | 1401 basement, unit 4 |
|  | 1402 basement |
|  | 1403 basement |
|  | 1404 basement |
|  | 1405 basement, unit 2 & 5 |
|  | 1406 basement |
|  | 1407 basement |
|  | 1408 basement, unit 2,3,4 & 5 |
|  | 1409 basement |
|  | 1411 basement, unit 5 |
|  | 1413 basement, unit 5 |
|  | 1415 basement |
|  | 1417 basement |
|  | 1419 basement |
|  | 1421 basement |
|  | 1423 basement |
|  |  |
| MAPLE | 1349 basement, unit 3 |
|  | 1351 basement |
|  | 1353 basement, unit 2,3,4 & 5 |
|  | 1355 basement, unit 2,3,4,& 5 |
|  | 1357 basement, unit 2 |
|  | 1401 basement |
|  | 1403 basement |
|  | 1405 basement, unit 4 |
|  | 1407 basement, unit 4 |
|  | 1409 basement |
|  | 1501 basement |
|  | 1503 basement |
|  | 1505 basement |
|  | 1507 basement |
|  | 1509 basement |
|  | 1511 basement, unit 2 & 3 |
|  |  |
| SYCAMORE | 1400 basement |
|  | 1401 basement, unit 3 |
|  | 1403 basement, unit 2 |
|  | 1405 basement |
|  | 1407 basement, unit 5 |

D0021

EPA  001717

# Elsmere Park Apartments



D0022

EPA  001718

## ATTACHMENT 2
## AREAS OF WASTEWATER RELEASE

D0023

Area 1-1409 Maple

Kitchen Sink Leak

Repaired & Cleaned by Maintenance staff > 1 year ago

Area 2-1357 Maple

Recent...will be taken care of as part of this Scope.

D0024

EPA 001720

# TAB 2

to

Exh.  B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| ELSMERE PARK CLUB, L.P., a<br>Delaware limited partnership,<br><br>    Plaintiff,<br><br>  v.<br><br>TOWN OF ELSMERE, a Delaware<br>Municipal corporation,<br>ELLIS BLOMQUIST, EUGENE BONEKER,<br>and JOHN GILES,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)   Civil Action No. 04-1321-SLR<br>)<br>)<br>)<br>)<br>)   Jury Trial Demanded<br>)<br>) |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

Pursuant to Fed. R. Civ. P. 34, Plaintiff Elsmere Park Club, L.P. ("EPC"), by and through

its attorneys Klehr, Harrison, Harvey, Branzburg & Ellers LLP, hereby responds to Defendants

Town of Elsmere ("Town"), Ellis Blomquist ("Blomquist"), Eugene Boneker ("Boneker"), and

John Giles ("Giles") First Set of Requests For Production of Documents ("Requests") as follows:

### GENERAL OBJECTIONS

1.  Plaintiff objects to each Request to the extent it purports to seek information

protected from disclosure by the attorney-client privilege; the attorney work product doctrine;

proprietary, financial or trade secret protections; confidentiality doctrines; any joint defense

agreement; any protective order; or any other privilege and/or immunity.

2.  Plaintiff objects to each Request to the extent it is not reasonably calculated to lead

to the discovery of admissible evidence within the meaning of the Federal Rules of Civil Procedure

and the local rules of this Court.

3.  Plaintiff objects to each Request to the extent it seeks information in the possession

of, or otherwise equally available to the Defendants, or is better obtained from other parties.

4.    Plaintiff objects to each Request to the extent it seeks information not within the possession, custody or control of Plaintiff.

5.    Plaintiff objects to each Request to the extent that it seeks information or requires responses from persons other than Plaintiff. To the extent that Plaintiff responds to any Request in whole, or in part, such response shall be by and on behalf of Plaintiff and shall be limited to its knowledge.

6.    Plaintiff objects to each Request to the extent that it imposes greater burdens on Plaintiff than permitted by the Federal Rules of Civil Procedure and the local rules of this Court.

7.    Plaintiff objects to each Request to the extent that any Request does not contain a reasonable time limitation, on the grounds that such Request is overly broad, unduly burdensome, oppressive, vague and/or ambiguous. In such a case, unless otherwise stated, Plaintiff has responded based upon a reasonable time limitation.

8.    These General Objections will be deemed to be continuing throughout the responses which follow, whether or not expressly referred to therein. The stating of additional or other specific objections shall not constitute a waiver or limitation of these General Objections in their entirety.

9.    Plaintiff has attempted to locate all relevant and responsive information within the time allowed. Plaintiff reserves the right to supplement or amend its answers and objections to these Requests in accordance with the Federal Rules of Civil Procedure and the local rules of this Court.

10.    Plaintiff has not completed its discovery, investigation or preparation for the trial of this matter. Accordingly, any documents and information provided are without prejudice to

2

Plaintiff's right to make further objections and present additional information and documents that are hereafter discovered or that further discovery and investigation may indicate are relevant to this action and called for by Defendants' Requests.

Subject to and without waiver of these General Objections, Plaintiff responds, after a reasonable inquiry, subject to supplementation, as follows:

## REQUESTS FOR DOCUMENTS

1.     All documents identified, requested to be identified, referred to, or needed in response to the First Set of Interrogatories, including all documents consulted, used, examined, or to which reference was made in connection with the preparation of such answer to the First Set of Interrogatories.

**Response:     See general objections. Subject to and without waiver of the general objections above, all responsive, non-privileged documents, and documents not subject to specific objections in Plaintiff's responses to interrogatories, will be made available to the Defendant for inspection at Plaintiff's counsel's office located at 260 South Broad Street, Philadelphia, Pennsylvania 19102.**

2.     All income and expense records for the Apartments, including all documents reflecting rental income, maintenance expenses, and administrative expenses.

**Response:     See general objections. Further, Plaintiff specifically objects to this interrogatory to the extent that it is unduly burdensome, irrelevant and not likely to lead to the discovery of admissable evidence. Subject to and without waiver of these objections, all responsive, non-privileged documents, and documents not subject to specific objections above, will be made available to the Defendants for inspection at Plaintiff's counsel's office located at 260 South Broad Street, Philadelphia, Pennsylvania 19102.**

3.     All local, state and federal tax records for the Apartments.

3

**Response:**     **See general objections.  Further, Plaintiff specifically objects this interrogatory to the extent that it is unduly burdensome, irrelevant and not likely to lead to the discovery of admissible evidence.**

4.     All documents regarding all offers received by EPC to purchase the Apartments after October 2002, including documents regarding the negotiation of said offers.

**Response:**     **See general objections.  Subject to and without waiver of the general objections above, all responsive, non-privileged documents will be made available to the Defendants for inspection at Plaintiff's counsel's office located at 260 South Broad Street,  Philadelphia, Pennsylvania 19102.**

5.     All documents, reports, notes or communications regarding estimates received by EPC after October 1, 2002 regarding remediation of the mold at the Apartments.

**Response:**     **See general objections.  Subject to and without waiver of the general objections above, all responsive, non-privileged documents were already made available to the Town in** *Ricky Manuel et al. v. Elsmere Park Club, L.P. et al.,* **Case No.  02C-10-212, filed in the Superior Court of Delaware (New Castle County).  Specifically,  see RT Environmental Services, Inc.'s remediation plan dated November, 2002.**

6.     All documents, reports, notes, or communications regarding estimates received by EPC after October 1, 2002 regarding removal of asbestos at the Apartments.

**Response:**     **See general objections.  Subject to and without waiver of the general objections above, see Plaintiff's response to request no. 5.**

7.     All documents, reports, notes, or communications regarding estimates received by EPC after October 1, 2002 regarding remediation of the raw sewage problem at the Apartments.

**Response:**     **See general objections.  Subject to and without waiver of the general objections**

4

above, see Plaintiff's response to request no. 5.

8.    All documents, reports, notes, or communications regarding estimates received by EPC after October 1, 2002 regarding structural repairs at the Apartments.

**Response:    See general objections.  Subject to and without waiver of the general objections above, none at this time.  Plaintiff's investigation is continuing and Plaintiff reserves its right to supplement this response in the event that responsive documentation is identified.**

9.    All documents, notes, or communications regarding EPC's attempts to appeal the Town's condemnation order before the Town's Board of Adjustment.

**Response:    See general objections.  Subject to and without waiver of the general objections above, all such documents are contained in correspondence between Plaintiff's counsel and counsel for the Town, which are equally available to both parties.**

10.    All documents that support EPC's damage claim(s).

**Response:    See general objections.  Subject to and without waiver of the general objections above, all responsive, non-privileged documents will be made available to the Defendants for inspection at Plaintiff's counsel's office located at 260 South Broad Street,  Philadelphia, Pennsylvania 19102.  Further responsive documentation will be provided in expert discovery pursuant to the Court's scheduling order.**

Dated:  July 19, 2005

KLEHR, HARRISON, HARVEY,
BRANZBURG & ELLERS LLP

By:

David S. Eagle (Bar #3387)
Patrick A. Costello (Bar #4535)
919 Market Street, Suite 1000
Wilmington, DE  19801-3062
(302) 426-1189 (Telephone)
(302) 426-9193 (Fax)
deagle@klehr.com
pcostello@klehr.com

*Attorneys for Plaintiff*

6

PHIL1 632107-1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ELSMERE PARK CLUB, L.P., a<br>Delaware limited partnership,<br><br>                          Plaintiff,<br><br>          v.<br><br>TOWN OF ELSMERE, a Delaware<br>Municipal corporation,<br>ELLIS BLOMQUIST, EUGENE BONEKER,<br>and JOHN GILES,<br><br>                          Defendants. | )<br>)<br>)<br>)<br>)<br>) Civil Action No. 04-1321-SLR<br>)<br>)<br>)<br>)<br>) Jury Trial Demanded<br>)<br>) |

### NOTICE OF SERVICE

I, Patrick A. Costello, hereby certify that I caused true and correct copies of Plaintiff's Response to Defendants' First Set of Requests for Admissions to be served upon the following on July 18, 2005 via fax and hand delivery.  I hereby further certify that I caused true and correct copies of Plaintiff's Response to Defendants' First Set of Interrogatories and Plaintiff's Response to Defendants' First Set of Requests for the Production of Documents to be served upon the following on July 19, 2005 and in the manner indicated below.

### VIA HAND DELIVERY

Edward M. McNally, Esquire
Linda Martin Gilchrist, Esquire
Morris, James, Hitchens & Williams LLP
222 Delaware Avenue, 10th Floor
P.O. Box 2306
Wilmington, DE  19899-2306

_____
Patrick A. Costello (Bar No. 4535)

29/
7/19/05

**Discovery Documents**

1:04-cv-01321-SLR Elsmere Park Club LP v. Town of Elsmere, et al

### U.S. District Court

### District of Delaware

Notice of Electronic Filing

The following transaction was received from Costello, Patrick entered on 7/19/2005 at 12:48 PM EDT and filed on 7/19/2005

**Case Name:**      Elsmere Park Club LP v. Town of Elsmere, et al
**Case Number:**    1:04-cv-1321
**Filer:**          Elsmere Park Club LP
**Document Number:** 29

**Docket Text:**
NOTICE OF SERVICE of Plaintiff's Response to Defendants' First Set of Requests for Admissions and Plaintiff's Response to Defendants' First Set of Interrogatories and Plaintiff's Response to Defendants' First Set of Requests for the Production of Documents by Elsmere Park Club LP.(Costello, Patrick)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=7/19/2005] [FileNumber=71512-0]
[c11aa01ca44bc416551943f60d98620987fd2a2d6c5c08d1aa20bb7333d64f1c2b88e
3c637f7eb21276b4a58c6444d6c8212f9203fa1c640a8f511bd18e01e42]]

**1:04-cv-1321 Notice will be electronically mailed to:**

David S. Eagle    deagle@klehr.com, sambrose@klehr.com

Linda Martin Gilchrist    lgilchrist@morrisjames.com,
DPilchard@morrisjames.com;LTosi@morrisjames.com

Edward M. McNally    emcnally@morrisjames.com, LTosi@morrisjames.com

**1:04-cv-1321 Notice will be delivered by other means to:**