IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ELSMERE PARK CLUB, L.P., a Delaware limited partnership, | : : : | |
| Plaintiff, | : : | Civil Action No. 04-1321 (SLR) |
| v. | : : | **JURY TRIAL DEMANDED** |
| TOWN OF ELSMERE, a Delaware municipal corporation, ELLIS BLOMQUIST, EUGENE BONEKER, and JOHN GILES, | : : : : : : | |
| Defendants. | : : | |

**DEFENDANTS TOWN OF ELSMERE, ELLIS BLOMQUIST,
EUGENE BONEKER AND JOHN GILES'
REPLY BRIEF IN SUPPORT OF THEIR MOTION
TO STRIKE THE SUPPLEMENTAL REPORT OF LARRY W. JOHNSON**

MORRIS, JAMES, HITCHENS & WILLIAMS LLP

Edward M. McNally (#614)
Liza H. Sherman (#4124)
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
(302) 888-6800
*emcnally@morrisjames.com*
*lsherman@morrisjames.com*
Attorneys for Defendants Town of Elsmere,
   Ellis Blomquist, John Giles and Eugene Boneker

Dated: November 2, 2005

# TABLE OF CONTENTS

TABLE OF CITATIONS ........................................................................................... ii

INTRODUCTION TO REPLY ARGUMENT ........................................................... 1

ARGUMENT ............................................................................................................. 4

I.  DEFENDANTS ARE NOT AT LIBERTY TO DISREGARD
    COURT ORDERS TO ACCOMMODATE DILATORY
    FILING BY PLAINTIFF ................................................................................ 4

II. JOHNSON'S OPINION IS ONLY CONSISTENT IN ITS INCONSISTENCY ...... 7

III. STIGMA MUST BE ACCOUNTED FOR EVEN
     IN REMEDIATED PROPERTIES ................................................................. 10

IV. THE JAB DOCUMENTS WERE AVAILABLE TO PLAINTIFF
    AT PLAINTIFF'S REQUEST ....................................................................... 12

CONCLUSION ........................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**                                                                                                                             **Page**

Fedorczyk v. Caribbean Cruise Lines, Ltd.,
    82 F. 3d 69 (3d Cir. 1996) ................................................................................ 8

Hubscher v. Pantzer Management Co.,
    1995 WL 563272 (D. Del.) ......................................................................... 9, 11

In re Crisomia,
    286 B.R. 604 (Bankr. E.D. Pa. 2002) ............................................................. 5

In re Paoli R.R. Yard PCB Litigation,
    916 F. 2d 829 (3d Cir. 1990) ....................................................................... 8, 9

In re TMI Litigation,
    193 F. 3d 613 (3d Cir. 1999) .......................................................................... 8

Johnson v. Mammoth Recreations, Inc.,
    975 F. 2d 604 (9th Cir. 1992) ......................................................................... 5

McLaughlin v. Diamond State Port Corp.,
    2004 WL 2958664 (D. Del.) ........................................................................... 6

Naughton v. Bankier,
    691 A. 2d 712 (Md. App. 1997) ..................................................................... 5

Trilogy Communications, Inc. v. Times Fiber Communications, Inc.,
    109 F. 3d 739 (Fed. Cir. 1997) ....................................................................... 6

**Other Authorities**

Fed. R. Civ. P. 16(b) .............................................................................................. 5

Fed. R. Civ. P. 26(e) .............................................................................................. 4

Peter S. Palewski, Environmental Cases In New York Pose Complex Remediation Issues With Profound Impact On Land Values, 72 N.Y. St. B. J. 8 (May 2000) ............. 11

**INTRODUCTION TO REPLY ARGUMENT**

Plaintiff's attempt to introduce the Supplemental Report of Larry W. Johnson (the "Supplemental Report") is a classic case of "too little, too late." The Supplemental Report must be excluded because it is impermissibly late and because, even if admitted, the Supplemental Report does not accomplish the purpose for which Plaintiff seeks its admission. The lateness of the Supplemental Report is self-evident and requires little exposition. As to the second failure of the Supplemental Report, Plaintiff seeks to admit the Supplemental Report as half of an incorrect valuation equation to compute Plaintiff's alleged damages.

There are several problems with Plaintiff's arguments in favor of the admission of the Supplemental Report. First, and most troubling, Plaintiff blithely disregards an order of the Court. Not only was the Supplemental Report served impermissibly late, but Plaintiff purports to usurp the exclusive dominion of the Court by "allowing" Defendants to act in derogation of the Scheduling Order without moving the Court to do so with the requisite showing of "good cause." Plaintiff contends that Johnson's untimely Supplemental Report is not problematic because Plaintiff offered Defendants the opportunity to disregard this Court's Scheduling Order, and to take Johnson's deposition after the close of discovery and to file a Daubert motion to challenge the Supplemental Report after the close of the deadline to file Daubert motions. Plaintiff misses the point. Plaintiff does not have the authority to give Defendants the right to act in derogation of an order of the Court nor can Plaintiff guarantee that, even if Plaintiff does not object to a Daubert motion as untimely, that the Court will accede to entertaining the untimely motion on the eve of trial. Thus, Defendants could conceivably be without recourse to challenge the Supplemental Report on its merits. Moreover, the proximity to trial makes the admission of the belated Supplemental Report highly prejudicial as Defendants will be left to scramble to depose

1

Johnson, evaluate his testimony and move the Court to shorten the briefing schedule in order to guarantee the resolution of the issue of the admissibility of his testimony before the pretrial conference slated for November 30, 2005. Above all, Plaintiff has proffered no explanation whatsoever for the delay in producing the Supplemental Report nor have they indicated the alleged change of circumstances that has necessitated the "supplementation" of Johnson's original report.

Second, Plaintiff contends that the Supplemental Report is entirely consistent with Johnson's prior deposition testimony. As evidence of this, Plaintiff has proffered <u>yet another</u> version of Johnson's testimony in the form of the errata sheet, attached as Exhibit A to Plaintiff's Answering Brief. Notably, the errata sheet was submitted on October 21, 2005, while Defendants' Motion to Strike was submitted and filed with the Court on October 12, 2005. Even with Johnson's putative "corrections," however, Johnson's deposition testimony on the issue of remediation costs is quite clear and remains unchanged—accurately estimating the costs of remediation before remediation efforts are underway is "impossible." (D.I. 66, Johnson Dep. Tr. at C398). Johnson stated clearly that his figures were merely a "guesstimate" of remediation costs. (<u>Id</u>.). Plaintiff suggests that Defendants have misconstrued Johnson's deposition testimony; not so. As set forth herein, Johnson's testimony, unaided by the creative spin of Plaintiff's counsel, speaks for itself.

To that end, the contention that Defendants "waived" their objection to Plaintiff's putative valuation methodology is patently false. Plaintiff purports to read into the e-mail correspondence between counsel for the parties an acceptance by Defendants of Plaintiff's proffered valuation methodology. This interpretation is, at best, a stretch of the imagination by Plaintiff. The actual statements by Defendants' counsel show only the lack of clarity with

respect to Plaintiff's position regarding how it plans to calculate its damages. Plaintiff posited to Defendants, with considerable obfuscation, that it planned to submit as evidence the costs of the remediation plan from the appraised value. Defendants did not respond via e-mail, but made clear their position with their Motion *In Limine* to Exclude the Expert Report and Testimony of David J. Wilk and the instant Motion to Strike.

Finally, Plaintiff contends that the calculation of the "stigma" which attaches to contaminated properties, such as the Apartments, would not exist but for the Condemnations. Plaintiff is therefore taking the position that, but for the Condemnations, it would have and could secretly remediated the Apartments (despite the obvious plastic sheeting that would have been required around the entry ways, not to mention the noise and disturbance to the tenants from the remediation process alone) and never informed a potential buyer of the fact that there had been water damage and mold remediation to the premises. It defies belief that Plaintiff is asking the Court to sanction misrepresentations to a potential buyer by asking the Court to admit a valuation methodology that necessitates exactly that action. Furthermore, it is in direct conflict with methods for assessments of market value set forth by Plaintiff's other putative expert, David J. Wilk ("Wilk"). Wilk stated in his report that fair market value assumes that "both parties are well-informed or well advised." (D.I. 65 at A146).

For the reasons set forth herein, Defendant's Motion to Strike the Supplemental Report of Larry W. Johnson should be granted.

## **ARGUMENT**

I. **DEFENDANTS ARE NOT AT LIBERTY TO DISREGARD COURT ORDERS TO ACCOMMODATE DILATORY FILING BY PLAINTIFF**

In its Answering Brief, Plaintiff contends that, "the information [the Supplemental Report] contains is not late." (D.I. 83 at 10). That is simply wrong. As set forth in Defendants' Motion to Strike, the Court entered a Scheduling Order on January 20, 2005 (D.I. 12). That order was amended by stipulation of the parties and approved by the Court on June 13, 2005 (D.I. 26) ("Amended Scheduling Order"). Pursuant to the Amended Scheduling Order, expert reports were due by August 15, 2005, rebuttal expert reports by September 15, 2005, and Daubert motions due by September 23, 2005. Discovery closed on August 22, 2005. Supplementation pursuant to Fed. R. Civ. P. 26(e) was also due on or before August 22, 2005. In spite of these Court-ordered deadlines, the Supplemental Report was not served until October 6, 2005—more than 50 days after the cut-off date for expert reports, approximately six weeks after the cut-off date for supplementation pursuant to Fed. R. Civ. P. 26(e), and two weeks after the deadline for Daubert motions. Thus, the Supplemental Report (and the information therein) is undeniably late. Plaintiff claims that "the Supplemental Report is neither new nor surprising," but fails to explain the necessity of a "supplement" that discloses no "new" information. (D.I. 83 at 10). Regardless, however, of whether the Supplemental Report contains new information or not, the report itself is undeniably late.

Plaintiff contends that this lateness is of no import because, "Plaintiff has agreed to allow Defendants to depose Johnson again; to give Defendants an opportunity to rebut Mr. Johnson's cost estimate with a rebuttal expert report of their own; and not to oppose any future *Daubert* motion by the Defendants as untimely based on not meeting the existing schedule for the case." (D.I. 83 at 10). Plaintiff's putative overtures are inadequate and inappropriate as Defendants are

4

not at liberty to defy an Order of this Court simply because <u>Plaintiff</u> will not object. It is axiomatic that it is the Court's dominion alone to authorize modifications to its scheduling order, and the scheduling order exists not only to protect parties from "trial by ambush" but to help control the Court's docket. <u>See</u> <u>Johnson v. Mammoth Recreations, Inc.</u>, 975 F.2d 604, 608 (9th Cir. 1992) ("A scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril...Disregard of the order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier. Rule 16 was drafted to prevent this situation and its standards may not be short-circuited."); <u>see also</u> <u>Naughton v. Bankier</u>, 691 A.2d 712, 718 (Md. App. 1997) ("If scheduling orders are to be permitted to be treated in such a casual fashion, why bother with them?"); <u>In re Crisomia</u>, 286 B.R. 604, 612 (Bankr. E.D. Pa. 2002) (an untimely expert supplement will only be permitted when a trial date is not yet been set and where so doing would not be disruptive to the parties or witnesses and would not impact on the Court's "otherwise fully scheduled calendar."). Rule 16 of the Federal Rules of Civil Procedure provides that a scheduling order "shall not be modified except upon a showing of good cause and by leave of the district judge." Fed. R. Civ. P. 16(b). Plaintiff has made no such showing of good cause, nor has it sought leave of the Court to serve its dilatory report. Defendants are not willing to act in derogation of an order of the Court upon the permission of Plaintiff alone. Doing so would not only place Defendants in an untenable strategic position in that it may not have recourse to object to the Supplemental Report on its merits, but would undermine the Court's dominion in controlling its own docket. Accordingly, Plaintiff's "concessions" regarding their willingness to allow Defendants to violate the scheduling Order are of no moment and do not cure the prejudice to Defendants that would result from admission of the Supplemental Report.

Violation of the scheduling order and the resultant delay in disposition of the case is prejudice *per se*. McLaughlin v. Diamond State Port Corp., 2004 WL 2958664, *4 (D. Del.) ("The purpose of a scheduling order is to provide concrete deadlines on which the parties can rely in planning their respective litigation strategies. If the court were to permit parties to ignore these deadlines, unfair surprise would abound."); See also Trilogy Communications, Inc. v. Times Fiber Communications, Inc., 109 F.3d 739, 745 (Fed. Cir. 1997) (noting that when scheduling orders are violated, "an opposing party is often prejudiced by the ensuing delay and resultant expense").

Thus, the lateness of the Supplemental Report and the failure of Plaintiff to show good cause to modify the Amended Scheduling Order require the exclusion of the Supplemental Report.

II.  **JOHNSON'S OPINION IS ONLY CONSISTENT IN ITS INCONSISTENCY**

In support of its efforts to defeat Defendants' Motion to Strike, Plaintiff alleges that the Supplemental Report is not in derogation of Johnson's deposition testimony because Johnson simply misspoke at his deposition and "forgot" key facts relating to his inspection. (D.I. 83 at Ex. A.). As evidence of Johnson's oversights, Plaintiff submits an errata sheet, where Johnson purports to correct and supplement his deposition testimony and claims, on that basis, that Johnson's opinion has been consistent. In fact, the only thing that has been consistent about Johnson's testimony is that it keeps changing. Defendants note that Johnson's errata sheet was submitted approximately five weeks after his deposition and one week after Defendants' Motion to Strike. Regardless of the suspect timing of Johnson's changes to his testimony, however, the changes Johnson made still do not cure the inconsistency between the Supplemental Report and his deposition testimony.

At bottom, the Supplemental Report is a purportedly "more accurate" estimate of remediation costs. As stated by Johnson at his deposition, however, it was (and still is) impossible for Johnson to ascertain the actual costs of remediation until remediation efforts are underway. Johnson testified that he "guesstimated" the extent of mold coverage and that his crew, "didn't take any measuring tools." (D.I. 66, Johnson Dep. Tr. at C398). Johnson's errata sheet does not suggest that he misspoke as to "guesstimating" the extent of mold coverage.

Furthermore, Plaintiff's bald assertion that Johnson was "not hindered by alleged 'hidden damages'" is directly contrary to Johnson's own, uncorrected, testimony. (See D.I. 83 at 11). Johnson testified that his preliminary cost estimate was preliminary because, "[t]here can be hidden damage you can't find until you actually start the remediation process." (D.I. 66, Johnson

7

Dep. Tr. at C398). This is not Defendants' spin on Johnson's testimony—it is his testimony, in context, verbatim. Johnson's errata sheet does not change this part of his testimony.

Johnson's Supplemental Report and errata sheet do not explain Johnson's curious ability to assess in his Supplemental Report in October what he was unable to assess only one month earlier during his deposition in September. Contrary to the assertions of Plaintiff, Johnson's uncertainty was not a result of inadequate lighting, but was a function of the fact that it is impossible to assess the full extent of contamination until wallboard and ceiling tiles been removed. Johnson himself confirmed this: "Many of the structural members were covered with wallboard, so it was impossible to determine [the need for replacement of those structural members]." (D.I. 66, Johnson Dep. Tr. at C396). Johnson's deposition testimony on this point is unambiguous.

In spite of this fact, Johnson's Supplemental Report purports to do what Johnson himself claimed at deposition was impossible—to assess the full extent of contamination without accessing the areas concealed by wallboard and ceiling. (D.I. 66, Dep. Tr. at C396). Moreover, Johnson offers no explanation of his newfound ability to do the "impossible." Furthermore, an expert, no matter how well-qualified may not "guesstimate" but must substantiate his opinion with facts and scientific observations. "Guesstimates" may not form the basis for scientific opinions. See In re TMI Litigation, 193 F.3d 613, 670 (3d Cir. 1999) ("We note that in order for expert testimony to be reliable, and therefore admissible, it must be based on the methods and procedures of science rather than subjective belief or speculation."); Fedorczyk v. Caribbean Cruise Lines, Ltd., 82 F.3d 69, 75 (3d Cir. 1996)(citations omitted)("[I]f an expert opinion is based on speculation or conjecture, it may be stricken."); see also In re Paoli R.R. Yard PCB

Litigation, 916 F.2d 829, 859 (3d Cir. 1990)(finding that attacks on an expert's opinions based upon "preliminary" diagnoses requiring additional testing were "forceful" and had merit).

With trial little more than two months away it is simply too late in the game for Plaintiff to play fast and loose with the substance of its expert's testimony, when that testimony is required for Plaintiff to establish a *prima facie* case. See Hubscher v. Pantzer Management Co., 1995 WL 563272, *2 (D. Del.) ("'If the matter in issue is one within the knowledge of experts only and not within the common knowledge of laymen, it is necessary for the plaintiff to introduce expert testimony in order to establish a *prima facie* case.'"). Because the Supplemental Report is directly contrary to Johnson's unamended deposition testimony it must therefore be excluded.

III. **STIGMA MUST BE ACCOUNTED FOR EVEN IN REMEDIATED PROPERTIES**

Plaintiff makes several puzzling statements in connection with its assertion that "stigma" need not be accounted for in its computation of alleged damages. First, it alleges that but for the Condemnations and the events surrounding the Condemnations, "there would have been no negative publicity and no stigma attached to the Apartments." (D.I. 83 at 13). Plaintiff does not suggest how it is that a "reasonable" potential buyer would be unaware of the contamination such that it would not take into account the many factors identified by the leading authority on assessing the value of a contaminated property: namely, the fear of hidden clean-up costs, "market resistance" in fearing the remediation was incomplete or inadequate, and the so-called "trouble factor" for a potential buyer who would not otherwise be encumbered with the chore of remediation. (D.I. 68 at Tabs 7-9). It is inconceivable that a reasonable buyer would not have known or cared that the Apartments were, at a point, contaminated by mold, asbestos and other environmental hazards. It is difficult, if not impossible, to conceal extensive plastic sheeting and remediation workers in protective garb entering and exiting the building. More important, however, a seller of real property makes certain representations and warranties when executing the sale relating to the condition of the property. Plaintiff would have either had to disclose the fact of remediation or sold the property "as is." Either way, the buyer would have been put on notice of the fact that the Apartments had been remediated. Indeed, Plaintiff's other putative expert, David J. Wilk stated that the definition of fair market value necessarily implies that, "both parties are well informed or well advised." (D.I. 65 at A146). Thus, "stigma" necessarily attaches where a buyer is well-informed and the seller does not attempt to conceal information.

Plaintiff also claims that, "once the Apartments were cleaned, the stated concern would be addressed and there would be no claim for stigma damages." (D.I. 83 at 13). This is contrary

10

to every leading authority on the subject of valuation of contamination. (See D.I. 56 at 20-21) ("Stigma" remains with a property even post-remediation). More troubling, however, is the fact that this conclusion is not the product of the expertise of Plaintiff's experts, but of surmising by Plaintiff's counsel. The presence or absence of "stigma" is not for determination by counsel, but by experts in the highly-specialized field of valuation of contaminated properties. (See D.I. 81 at 11, citing, Peter S. Palewski, Environmental Cases In New York Pose Complex Remediation Issues With Profound Impact On Land Values, 72 N.Y. St. B. J. 8, 8 (May, 2000)("[L]aymen are unlikely to comprehend the profound impact that toxic contamination may have on the environment and land values."); Hubscher, 1995 WL 563272, *2 ("'If the matter in issue is one within the knowledge of experts only and not within the common knowledge of laymen, it is necessary for the plaintiff to introduce expert testimony in order to establish a *prima facie* case.'"). The recognized experts in the field of valuation of contaminated properties state, quite clearly, that once a property is contaminated, it bears the effects of stigma even after remediation. (D.I. 81 at 11, citing Palewski at 8). Thus, Plaintiff's position that "stigma" would not exist but for the Condemnations is without merit.

IV. **THE JAB DOCUMENTS WERE AVAILABLE TO PLAINTIFF AT PLAINTIFF'S REQUEST**

Plaintiff has rewritten history in a failed attempt to claim that actual measure of remediation costs are inadmissible. Plaintiff alleged that it made "numerous requests" to obtain the business records of J.A.B. Properties Management (the "JAB Documents"). In fact, Plaintiff's Counsel made exactly one inquiry as to the status of the JAB Documents, which can be described as a "request" to obtain the JAB Documents only with a very liberal interpretation of the word "request." (See Exhibit A, attached hereto). In response to Plaintiff's inquiry, Plaintiff was informed that Defendants were not at liberty to share the JAB Documents with Plaintiff until the confidentiality of the documents would be protected. Plaintiff was well aware of this limitation prior to October 10, 2005 because counsel for Defendants contacted Plaintiff's counsel by telephone on September 19, 2005, to propose a stipulated protective order to abate JAB's concerns. (See Exhibit B, attached hereto).

On September 20, 2005, Defendants forwarded a proposed draft stipulated protective order, which Plaintiff flatly refused to review. (Id.) Plaintiff made no earnest overtures towards obtaining the JAB Documents until October 10, 2005. Thus, the portrayal by Plaintiff of a situation where Plaintiff was seeking the JAB Documents but could not secure the cooperation of Defendants is simply disingenuous, as the series of e-mails attached hereto makes quite clear. The JAB Documents were available to Plaintiff from the time Defendants obtained them. The delay was not owing to "confidentiality issues between JAB and Defendants" as Plaintiff alleges (D.I. 83 at 14), but rather to a lack of timely cooperation by Plaintiff.

Finally, Plaintiff claims that the actual costs of remediation are somehow "not probative of fair market value" of the Apartments. (D.I. 83 at 14). Plaintiff contends that a "reasonable buyer" would not be able to assess the actual costs of remediation and would therefore

12

necessarily rely on an estimate of remediation costs. This statement is precisely why the proper valuation of contaminated properties is so critical. It is the art and the science of valuing contaminated properties that quantifies what a "reasonable buyer" considers in valuing a prospective purchase of contaminated properties. A reasonable buyer does not merely account for visible hazards, and assess the cost of crude and minimalist remediation efforts. Rather a "reasonable buyer" takes into account factors such as clean-up costs, the availability of indemnities, equity yield rates and risk premiums, the costs of financing, the fear of hidden clean-up costs, "market resistance" in fearing the remediation was incomplete or inadequate, and the so-called "trouble factor" for undertaking the chore of remediation. These factors create an overall reduction of value in the range of 20.9% to 93.7%. (See D.I. 68 at Tab 9). Thus, Plaintiff's contention that the JAB Documents are not probative is unavailing.

Accordingly, Plaintiff's assertion that the actual remediation costs must be excluded fails.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, Defendants' Motion to Strike the Supplemental Report of Larry W. Johnson should be granted.

MORRIS, JAMES, HITCHENS & WILLIAMS LLP

_____
Edward M. McNally (#614)
Liza H. Sherman (#4124)
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
(302) 888-6800
*emcnally@morrisjames.com*
*lsherman@morrisjames.com*
Attorneys for Defendants Town of Elsmere,
   Ellis Blomquist and Eugene Boneker

Dated: November 2, 2005

1303424

14

## CERTIFICATE OF SERVICE

I hereby certify that on November 2, 2005, I electronically filed the foregoing Defendants Town of Elsmere, Ellis Blomquist, Eugene Boneker and John Giles' Reply Brief in Support of Their Motion to Strike the Supplemental Report of Larry W. Johnson, with Exhibits A and B, with the Clerk of Court using CM/ECF, which will send notification of such filing to the following:

>David S. Eagle, Esquire
>Klehr, Harrison, Harvey,
>Branzburg & Ellers LLP
>919 Market Street, Suite 1000
>Wilmington, DE 19801
>Attorneys for Plaintiff Elsmere Park Club, L.P.

>_____
>Edward M. McNally (#614)
>Liza H. Sherman (#4124)
>Morris, James, Hitchens & Williams LLP
>222 Delaware Avenue, 10th Floor
>Wilmington, DE 19801
>(302) 888-6800
>emcnally@morrisjames.com
>lsherman@morrisjames.com
>Attorneys for Defendants Town of Elsmere,
>  Ellis Blomquist and Eugene Boneker

Dated: November 2, 2005

1305434/1