# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ELSMERE PARK CLUB, L.P.,　　　　　　:
a Delaware limited partnership,　　　　:
　　　　　　　　　　　　　　　　　　:
　　　　　　　　Plaintiff,　　　　　　:　　　Civil Action No. 04-1321 (SLR)
　　　　　　　　　　　　　　　　　　:
　　　　v.　　　　　　　　　　　　　:　　　**JURY TRIAL DEMANDED**
　　　　　　　　　　　　　　　　　　:
TOWN OF ELSMERE, a Delaware　　　　:
municipal corporation, ELLIS　　　　　:
BLOMQUIST, EUGENE BONEKER,　　　:
and JOHN GILES,　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
　　　　　　　　Defendants.　　　　　:
　　　　　　　　　　　　　　　　　　:
_____:

## DEFENDANTS TOWN OF ELSMERE, ELLIS BLOMQUIST, EUGENE BONEKER AND JOHN GILES OPENING BRIEF IN SUPPORT OF THEIR MOTION FOR SANCTIONS

MORRIS, JAMES, HITCHENS & WILLIAMS LLP

Edward M. McNally (#614)
Liza H. Sherman (#4124)
222 Delaware Avenue, 10th Floor
Wilmington, Delaware  19801
(302) 888-6800
*emcnally@morrisjames.com*
*lsherman@morrisjames.com*
Attorneys for Defendants Town of Elsmere,
　　Ellis Blomquist, John Giles and Eugene Boneker

Dated:  November 7, 2005

## TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF THE PROCEEDINGS .................................................1

STATEMENT OF RELEVANT FACTS .........................................................3

ARGUMENT .........................................................................5

I.  INTRODUCTION ................................................................5

II. EXCLUSION OF WILK'S REPORT AND TESTIMONY
    IS AN APPROPRIATE SANCTION FOR PLAINTIFF'S
    FAILURE TO PRODUCE WILK FOR DEPOSITION ...............................6

    A.  All Applicable Rules Provide The Authority To Sanction
        A Party For Violation Of Its Discovery Obligations .................................6

    B.  Precluding Wilk's Report and Testimony is An Appropriate
        Sanction Even Though It is Tantamount to Dismissal................................6

        1.  Defendants Will Suffer Prejudice as a Result of
            the Failure to Produce Wilk ................................................8

        2.  Plaintiff Has a History of Dilatoriness.............................................9

        3.  Plaintiff Has Acted in Willful Disregard of its
            Discovery Obligations and in Bad Faith ......................................10

        4.  No Other Sanction is Equally Effective .........................................12

        5.  Plaintiff's Claim Lacks Merit ........................................................12

III. AN AWARD OF ATTORNEYS FEES IS APPROPRIATE................................14

CONCLUSION.........................................................................16

# TABLE OF AUTHORITIES

**Cases**                                                                          **Page**

Adams v. Trs. Of the N.J. Brewery Employees' Pension Trust Fund,
    29 F. 3d 863 (3d Cir. 1994)....................................................................................9, 10

Blue Grass Steel, Inc. v. Miller Bldg. Corp.,
    162 F.R.D. 493 (E.D. Pa. 1995)..........................................................................14

Curtis T. Bedwell & Sons, Inc. v. International Fidelity Ins. Co.,
    843 F.2d 683 (3d Cir. 1988)................................................................................9

Estate of Spear v. Commissioner of I.R.S.,
    41 F.3d 103 (3d Cir. 1994)..................................................................................7

Hicks v. Feeney,
    850 F.2d 152 (3d Cir. 1988)
    cert. denied, 488 U.S. 1005 (1989) ..........................................................7

Huertas v. City of Philadelphia,
    2005 WL 226149 (E.D. Pa. Jan. 26, 2005) ..........................................................8, 9

Philadelphia Cervical Collar v. Jerome Med.,
    2003 U.S. Dist. LEXIS 6572 (E.D. Pa. Mar. 31, 2003)..................................10, 11

Poulis v. State Farm Fire & Cas. Co.,
    747 F.2d 863 (3d Cir. 1984)...............................................................7, 9, 12, 13

Price v. Kent General Hosp.,
    1999 WL 33283810 (D. Del. Nov. 2, 1999) ........................................................14

Sheppard v. Glock, Inc,
    176 F.R.D. 471 (E.D. Pa. 1997)
    aff'd, 142 F.3d 429 (3d Cir. 1998)................................................................6, 7, 8

Smith ex. Rel. El Ali v. Altegra Credit Co.,
    2004 WL 2399773 (E.D. Pa. Sept. 22, 2004) ......................................................10

Tarlton v. Cumberland County Correctional Facility,
    192 F.R.D. 165 (D.N.J. 2000)...........................................................................14

**Other Authorities**

D. Del. LR 1.3 ................................................................................................6, 14

Fed. R. Civ. P. 26(b)(4).........................................................................................6

Fed. R. Civ. P. 26(e) ...........................................................................................10

Fed. R. Civ. P. 37.............................................................................................6, 14

Fed. R. Civ. P. 37(b)(2)(B) ...................................................................................6


Maureen Milford, <u>New York Times</u>, "A Long-Shut Delaware Tower May Finally Reopen," (October 7, 2001)........................................................................................11

## NATURE AND STAGE OF THE PROCEEDINGS

This case is groomed for trial, presently scheduled to begin on January 4, 2006.

This is an action by Plaintiff against Defendants for alleged procedural due process

violations regarding the condemnation and evacuation (collectively, the

"Condemnation") of the Elsmere Park Apartments, a/k/a Fenwick Park Apartments (the

"Apartments") in October 2002.  In its Amended Complaint, EPC alleges that it sustained

"significant damages," (D.I. 22, ¶ 71) because it sold the vacant Apartments for less than

what it claims was their fair market value and that the fair market value of the

Apartments was diminished as a result of the Condemnation.  Plaintiff further alleges that

the appropriate measure of its damages is equal to (1) the fair market value of the

apartments in an uncontaminated condition less (2) the estimated costs of remediation.

(D.I. 78 at 21-22).  Plaintiff must present expert testimony as to both parts of its equation.

It has not met its discovery obligations with respect to either evidentiary requirement.

Expert reports were due by August 15, 2005, rebuttal expert reports were due by

September 15, 2005, and Daubert motions were due by September 23, 2005.  Fact

discovery closed on August 22, 2005.  Plaintiff served David J. Wilk's ("Wilk") report on

August 23, 2005.  The relevance of Wilk's report is challenged by Defendants, who filed

a Motion *In Limine* to Exclude the Expert Report and Testimony of David J. Wilk on

September 22, 2005 (D.I. 55)(the "Defendants' Daubert Motion").  Briefing on

Defendants' Daubert Motion was completed on October 24, 2005 and Defendants have

requested oral argument (D.I. 84).

Defendants have noticed Wilk's deposition three times.  (See D.I. 46, D.I. 47 and

D.I. 82).  Plaintiff has failed to produce Wilk—the alleged key to the first part of

Plaintiff's alleged damages calculation—for deposition at any time. Most recently, Wilk's deposition was noticed for November 1, 2005. As set forth herein, Plaintiff failed to produce Wilk and failed to supply any explanation as to why.

Plaintiff served a putative "Supplemental Report" on the subject of remediation costs by Larry W. Johnson ("Johnson") on October 6, 2005 (D.I. 71). Defendants moved to Strike Johnson's Supplemental Report as untimely and prejudicial on October 12, 2005 (D.I. 74)("Defendants' Motion to Strike"). Briefing on the Johnson Motion to Strike was completed on November 2, 2005. A pre-trial conference is presently scheduled to occur on November 30, 2005.

Because of the failure of Plaintiff to produce a critical witness for deposition as part of a pattern of dilatoriness and bad faith, Defendants have herewith filed a Motion for Sanctions against Plaintiff. This is the Defendants' Opening Brief in Support of their Motion for Sanctions.

## STATEMENT OF RELEVANT FACTS

Three times Defendants have noticed and prepared for Wilk's deposition and three times Plaintiff has cancelled Wilk's appearance at the eleventh hour with minimal notice and no explanation. The relevant facts are straightforward and reflect a pattern of misconduct and misrepresentations by Plaintiff with respect to their intention to produce Wilk:

- September 8, 2005: Defendants properly file and serve Notice of Deposition, scheduling Wilk's deposition for September 14, 2005. (See Ex. A).

- September 9, 2005: Plaintiff writes to Defendants and indicates that Wilk is available for deposition on September 21 and 22. (See Ex. B).

- September 14, 2005: Defendants properly file and serve Re-Notice of Deposition, scheduling Wilk's deposition for September 22, 2005. (See Ex. C).

- September 18, 2005: Plaintiff notifies Defendants at 9:00PM that Wilk is unavailable on September 22, 2005. Plaintiff offers September 29, 2005 as an alternative. (See Ex. D).

- September 22, 2005: Defendants file and serve Defendants' Motion *In Limine* to Exclude the Expert Report and Testimony of David J. Wilk. (D.I. 55).

- October 7, 2005: Wilk's deposition is informally rescheduled for October 14, 2005.

- October 12, 2005: Defendants file and serve Motion to Strike Supplemental Report of Larry W. Johnson (D.I. 74).

- October 14, 2005: Wilk is not produced for deposition.

- October 25, 2005: Defendants properly file and serve Re-Notice of Deposition, scheduling Wilk's deposition for November 1, 2005. (See Ex. E).

- November 1, 2005: Plaintiff again fails to produce Wilk for deposition. (See Ex. F).

At no time has Plaintiff proffered an explanation for its failure to produce Wilk, other than vague references to Wilk's availability and "confidentiality issues." Despite the

3

veneer of cooperation by Plaintiff, the consistent and repeated failure to actually produce

Wilk tells a different story. It is apparent, from the record that Plaintiff never had an

earnest intention of producing Wilk. This fact is confirmed by Plaintiff's recent

admission that it may decide not to rely upon Wilk as an expert. (See Ex. F).

Plaintiff has contended that its damages can be calculated by subtracting the

figure set forth in the belated Supplemental Report from the figure set forth in Wilk's

report. Thus, Plaintiff's case hinges upon two key pieces of evidence—the Supplemental

Report and Wilk's report (and the testimony of both putative experts in support thereof).

Defendants firmly reject that this is the appropriate measure of Plaintiff's alleged

damages. However, even accepting Plaintiff's valuation methodology as true, Plaintiff

can simply not establish a *prima facie* case without Wilk's testimony.

At present, trial is scheduled for January 4, 2006. The pre-trial conference is

scheduled for November 30, 2005. The dilatory tactics of Plaintiff can serve only one

end—the postponement of trial. Accordingly, a sanction is appropriate for the prejudice

Plaintiff's tactics have caused to Defendants, the blatant disregard for this Court's

Scheduling Order and docket, and for the calculated disregard for Plaintiff's discovery

obligations.

## ARGUMENT

### I.    INTRODUCTION

Plaintiff has failed to meet its obligation to produce its putative expert on

valuation, David J. Wilk, for deposition by the Defendants.  It offered no explanation for

this failure the first time it failed to produce Wilk, nor the second time it failed to produce

Wilk, nor the third time it failed to produce Wilk.  Rather, Plaintiff continually led

Defendants to believe that they were operating in good faith and the spirit of cooperation

when, in fact, Plaintiff was, at best, uncertain of its intention to actually produce Wilk for

deposition.

As a result, Defendants have incurred the costs of preparing for Wilk's deposition

not once, but three times. Plaintiff's nonperformance of this fundamental discovery

requirement has prejudiced Defendants in creating uncertainty with respect to the

evidence Plaintiff intends to put on in support of its claims. As of October 31, 2005,

Plaintiff still refused to commit to a date for Wilk's deposition. (See Ex. F). It is simply

unfair to Defendants, at this juncture, to have to guess as to what evidence Plaintiff will

produce at trial. Moreover, Defendants have relied, in good-faith, on the representations

of Plaintiff about Wilk's appearance for deposition. It is therefore inequitable to require

Defendants to contend with scheduling and taking Wilk's deposition when the resulting

prejudice was solely the product of Defendants' reliance on Plaintiff's

misrepresentations.

For the reasons set forth herein, Wilk's expert report and testimony are properly

excluded as a sanction for the discovery abuses of Plaintiff, even though such sanction is

tantamount to the dismissal of Plaintiff's complaint.

## II. EXCLUSION OF WILK'S REPORT AND TESTIMONY IS AN APPROPRIATE SANCTION FOR PLAINTIFF'S FAILURE TO PRODUCE WILK FOR DEPOSITION

### A. All Applicable Rules Provide The Authority To Sanction A Party For Violation Of Its Discovery Obligations

Plaintiff's repeated failure to produce Wilk warrants the preclusion of Wilk's testimony and expert report as a sanction for Plaintiff's discovery abuses. Defendants are entitled to depose Wilk, if Plaintiff plans to introduce his report and testimony. Rule 26(b)(4) of the Federal Rules of Civil Procedure provides that a party may take the deposition of "any person who has been identified as an expert whose opinions may be presented at trial." Fed. R. Civ. P. 26(b)(4). However, when a party fails to meet those obligations, Rule 37 of the Federal Rules of Civil Procedure ("Rule 37") and Local Rule 1.3 permit the imposition of sanctions against that party. Both rules permit, *inter alia*, precluding the introduction of evidence, dismissal, and assessing reasonable expenses, including attorney's fees. Fed. R. Civ. P. 37, Local Rule 1.3.

### B. Precluding Wilk's Report and Testimony is An Appropriate Sanction Even Though It is Tantamount to Dismissal

The imposition of sanctions has been expressly affirmed by the Third Circuit in situations where a party has not been forthcoming with its expert's opinion. In Sheppard v. Glock, Inc., 176 F.R.D. 471 (E.D. Pa. 1997), aff'd, 142 F.3d 429 (3d Cir. 1998), the court held that precluding the plaintiffs from using any liability experts was an appropriate sanction even though it was tantamount to dismissal. In that case, a police officer and her husband sued the manufacturers of a handgun after it discharged a bullet into her leg while she was holstering it. The court entered a pretrial scheduling ordering that set the date for the production of liability expert reports. The plaintiffs missed their deadline. The District Court imposed the Federal Rule of Civil Procedure 37(b)(2)(B)

sanction precluding their use of any liability experts. On the defendants' motions for summary judgment, the District Court held that the preclusion sanction was warranted and that, as a result, summary judgment was appropriate as Plaintiff lacked evidence to establish a *prima facie* case.

Because the exclusion of the expert report was tantamount to dismissal, the Court in Sheppard considered the six factors used in the Third Circuit to determine whether dismissal is an appropriate sanction. In Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863 (3d Cir. 1984), the Third Circuit instructed that the District Court should weigh:

> (1) the extent of the party's personal responsibility;
>
> (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery;
>
> (3) the offending party's history of dilatoriness;
>
> (4) whether the conduct of the party or the attorney was willful or in bad faith;
>
> (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and
>
> (6) the meritoriousness of the claim or defense.

Poulis 747 F.2d at 868-870. Dismissal can be appropriate even when some of the factors are not met. Hicks v. Feeney, 850 F.2d 152, 156 (3d Cir. 1988), cert. denied, 488 U.S. 1005 (1989). For example, dismissal may be fitting even absent willfulness or bad faith, Estate of Spear v. Commissioner of I.R.S., 41 F.3d 103, 112 (3d Cir. 1994), or when the dismissed claim is arguably meritorious Sheppard, 176 F.R.D. at 473).

In Sheppard, a weighing of the Poulis factors was found to permit the exclusion of critical evidence, even when such exclusion was tantamount to dismissal. In favor of allowing the expert testimony, the District Court found that the plaintiffs themselves were

7

not responsible for their attorney's behavior, and that their claims were meritorious. (Sheppard at 473, 478 f.n. 8.)  In favor of exclusion, the court found prejudice to the defendants arising from being prevented from preparing their defense and being forced to incur additional expenses, that the plaintiffs had previously missed several deadlines, that the plaintiffs' attorney made multiple misrepresentations to the court and acted in bad faith, and that lesser sanctions, while available, were not sufficient.  (Id. at 473-480.) Weighing these factors, the District Court held that the preclusion of the plaintiffs' liability expert was appropriate even though it was tantamount to a dismissal.

The Poulis factors are considered *seriatim*.

### 1.  Defendants Will Suffer Prejudice as a Result of the Failure to Produce Wilk

As in Sheppard, the Defendants in the instant proceeding are prejudiced by being prevented from preparing their defense and from being forced to incur additional expenses.  As of the date of Wilk's last scheduled deposition, there was little more than two months until trial.  Time is now even shorter and Defendants are now in the process of preparing fully for trial.  Moreover, the attorneys for Defendants have now prepared, on three separate occasions, for Wilk's deposition, including securing a court reporter.

In addition to the costs Defendants have incurred, Defendants have also been prejudiced by the delay Plaintiff's behavior has caused in the case.  In Huertas v. City of Philadelphia, Plaintiff failed to appear five times for properly noticed depositions. Huertas v. City of Philadelphia, 2005 WL 226149, *1 (E.D. Pa., Jan. 26, 2005).  The court found that this failure "delayed the progress of this case considerably," and that, "A prolonged delay in litigating a case creates a presumption of prejudice because it harms a defendant's ability to present a full and fair defense on the merits of plaintiff's claim."

8

Heuertas at *3.  Huertas found that Plaintiff's failure to attend properly noticed

depositions prejudiced the Defendants in that case because Defendants incurred extra

costs preparing for each of the depositions, providing a court reporter at each of these

depositions, and filing a motion to compel Plaintiff's compliance with his discovery

obligations costs were the direct result of Plaintiff's failure to attend his scheduled

depositions.

      "Prejudice" in the context of the Poulis analysis does not mean "irremediable"

harm, but the extra costs of repeated delays and filing of motions required by the abusive

behavior of the plaintiff.  Curtis T. Bedwell & Sons, Inc. v. International Fidelity Ins.

Co., 843 F.2d 683, 693-94 (3d Cir. 1988); Poulis 747 F.2d at 868.

      In the final weeks before trial, when Defendants should be focusing on their

strategy and planning for the nuts and bolts of trial, they are encumbered with uncertainty

regarding Plaintiff's ability to present *prima facie* evidence.  Thus, Defendants are

prejudiced by Plaintiff's failure to produce Wilk.

### 2.    **Plaintiff Has a History of Dilatoriness**

      Plaintiff has previously been impermissibly late in meeting its discovery

obligations.  Specifically, the "Supplemental Report" upon which Plaintiff's claim also

hinges, in part, was served well after the passing of all relevant deadlines.  "[R]epeated

delay or delinquency ... such as consistent non-response to interrogatories, or consistent

tardiness in complying with court orders" constitutes a history of dilatoriness.  Adams v.

Trs. of the N.J. Brewery Employees' Pension Trust Fund, 29 F.3d 863, 874 (3d Cir.

1994).  The dilatoriness, however, needs not be extensive—even one prior failure can

constitute a history of dilatoriness.  See Poulis, 747 F.2d at 868.

The Supplemental Report was served more than 50 days after the cut-off date for expert reports, approximately six weeks after the cut-off date for supplementation pursuant to Fed. R. Civ. P. 26(e), and two weeks after the deadline for <u>Daubert</u> motions. (<u>See</u> D.I. 26, D.I. 71). Thus, Plaintiff has missed relevant deadlines, offered no warning or explanation of the delay and then, when challenged as its dilatoriness, contended that Defendants must "cooperate" and accept the lateness or utter failure to produce evidence of both halves of its unsubstantiated valuation equation. (<u>See</u>, e.g. Ex. F). Accordingly, Plaintiff has established a history of dilatoriness.

### 3.    Plaintiff Has Acted in Willful Disregard of its Discovery Obligations and in Bad Faith

Plaintiff's failure to produce Wilk is precisely the type of self-serving conduct Rule 37 seeks to remedy. "Willfulness involves intentional or self-serving behavior." <u>Adams</u>, 29 F.3d at 875. In evaluating whether to dismiss with prejudice, the Court looks for the "type of willful or contumacious behavior that can be characterized as acting in 'flagrant bad faith.'" <u>Smith ex. rel. El Ali v. Altegra Credit Co.</u>, 2004 WL 2399773 at *6 (E.D. Pa., Sept. 22, 2004), (quoting <u>Adams</u>, 29 F.3d at 875). A "persistent failure to honor discovery orders may be viewed as a willful effort to evade discovery." <u>Philadelphia Cervical Collar v. Jerome Med.</u>, 2003 U.S. Dist. LEXIS 6572 *18 (E.D. Pa. Mar. 31, 2003).

Plaintiff has promised three times that it would present Wilk for deposition. Three times, Plaintiff has failed to do so. It is apparent, at this juncture, that Plaintiff has no intention of producing Wilk. The reason for Plaintiff's position is manifest. Wilk's deposition would be the *coup de grâce* to Plaintiff's case. Wilk will undoubtedly testify that Plaintiff's valuation methodology is incorrect or, at best, incomplete. With all

relevant deadlines passed, Plaintiff is unable to rehabilitate its case at this juncture. Thus, Plaintiff's failure to comply with its requirement to produce Wilk is the product of bad faith.

As set forth in Plaintiff's Answering Brief in Opposition to Defendants' Motion *In Limine* to Exclude the Expert Report and Testimony of David J. Wilk (D.I. 78), Plaintiff seeks to charge the jury with the task of assessing the fair market value of the Apartments prior to the Condemnation by having them subtract the remediation costs estimated by Larry W. Johnson from the valuation of the properties in an uncontaminated condition by Wilk. (Id. at 21-22).

Unfortunate for Plaintiff, however, is the fact that Wilk, himself, has previously stated that this is an incorrect valuation methodology. By allowing Wilk to be deposed, Plaintiff runs the risk that Wilk will refute the very valuation methodology upon which Plaintiff's fragile damages theory rests. Indeed, Wilk has previously stated that the market value of a contaminated building reflects certain arguing stigma concerns, even after it is fully remediated. When interviewed by the New York Times regarding the effect of the 1997 arson of the Delaware Trust Building on the value of that building, including considerations of water damage, asbestos contamination, interior air pollution and the overgrowth of microbes, Wilk commented, "[o]nce an older building is damaged by fire, owners have to overcome perceptions among prospective tenants that the building is still contaminated by hazardous materials…For a damaged property to re-enter the market, the owners have to repair it to a level equal to or greater than the competition to avoid marketability problems." Maureen Milford, New York Times, "A Long-Shut Delaware Tower May Finally Reopen," (October 7, 2001) (Ex. G). Thus, Wilk has

11

explicitly recognized the validity and application of the "stigma" principles which Plaintiff eschews (See D.I. 83 at 12).

Plaintiff thus finds itself in the untenable position of having a valuation expert who disagrees with its valuation methodology. Accordingly, Plaintiff's failure to produce Wilk is the product of bad faith and willful disregard of its discovery obligations.

### 4.    No Other Sanction is Equally Effective

In determining the appropriate sanction to impose, District Courts are advised to seek the most direct route that serves to remedy the dereliction at issue. See Poulis, 747 F.2d at 869. The most direct means of remedying the failure of Plaintiff to permit Wilk to be deposed is the exclusion of Wilk's testimony and report.

Because of the proximity to trial, and the prejudice that would result to Defendants if forced to contend with scheduling, preparing for and conducting a deposition at the eleventh hour, no alternative sanction is equally effective as remedying the harm caused by Plaintiff's conduct. Defendants have a right to inquire as to the substance of Wilk's testimony. If they are denied that right, or denied the ability to exercise that right in a meaningful way, preclusion of that evidence of Plaintiff's alleged damages is the only appropriate sanction, even if that sanction results in the effective dismissal of the case.

### 5.    Plaintiff's Claim Lacks Merit

As the Poulis court stated, "[a] claim ... will be deemed meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff or would constitute a complete defense." Poulis, 747 F.2d at 869-70 (citations omitted).

As set forth in Defendants' Motion for Summary Judgment (D.I. 43), Plaintiff simply cannot prove its due process claims. Not only did Defendants properly exercise their authority in condemning and evacuating the Apartments, but they received and relied upon the expertise of the Delaware State Department of Public Health in evaluating and acting on the situation present at the Apartments. (Id. at 2). Furthermore, EPC clearly had notice and the opportunity to be heard regarding Defendants' emergency order, as evidenced by EPC's motion for temporary restraining order filed and heard within five days after the first buildings were condemned and evacuated, and EPC's deliberate decision not to avail itself of its administrative remedies. (Id.). Accordingly, the lack of merit of Plaintiff's claim permits the exclusion of critical evidence.

### III.    AN AWARD OF ATTORNEYS FEES IS APPROPRIATE

Plaintiff has willfully caused Defendants to incur the expense and time in trying to depose Wilk and in bringing this motion.  Thus, an appropriate sanction, in addition to the exclusion of Wilk's report and testimony, is the award of fees and costs for preparing for each of Wilk's noticed depositions and filing the instant motion.  Rule 37 requires the imposition of fees as a sanction for failure to appear for deposition. Rule 37(d) states in relevant part: "In lieu of an order or in addition thereto, the court shall require the party failing to act or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." Fed.R.Civ.P. 37(d) (emphasis added). Local Rule 1.3 echoes the propriety of an award of attorney's fees under the circumstances: "The violations of or failure to conform with any of the Local Rules of the United States District Court for the District of Delaware, the Federal Rules of Civil Procedure or any order of this Court...shall subject the offending party and that party's attorney, at the discretion of the Court, to appropriate discipline including, but not limited to the imposition of costs, fines, and such attorneys' fees to opposing counsel as the Court may deem proper under the circumstances." Local Rule 1.3.

Both rules have been applied by this Court to impose sanctions for discovery abuses.  In Price v. Kent General Hosp., the court held that sanctions in the form of attorney's fees and costs was an appropriate remedy for a noticed deposition which is not attended by a party or party's counsel.  Price v. Kent General Hosp., 1999 WL 33283810, *1 (D. Del., Nov. 2, 1999), citing Blue Grass Steel, Inc. v. Miller Bldg. Corp., 162 F.R.D.

493 (E.D. Pa. 1995) (awarding opposing counsel attorney's fees and costs associated with filing of sanctions motion, where plaintiff failed to appear for scheduled deposition); <u>See also</u> <u>Tarlton v. Cumberland County Correctional Facility</u>, 192 F.R.D. 165 (D.N.J. 2000)(defendants' failure to comply with Rule 26 warranted the sanction of requiring the Plaintiff pay attorney's fees for the costs of deposing, and of bringing the motion for sanctions).

   Given the time spent by Defendants in preparing for each of Wilk's noticed deposition and the resultant need to prepare and file the instant Motion, an award of attorney's fees and costs associated therewith is mandated by Rule 37(d) and appropriate pursuant to Local Rule 1.3.

## CONCLUSION

For the foregoing reasons, Defendants respectfully asks the Court to:

(i)  Exclude the expert report and testimony of David J. Wilk; and

(ii)  Order Plaintiff and/or its attorneys to pay all costs, fines, and attorneys' fees

as this Court deems proper under the circumstances.

MORRIS, JAMES, HITCHENS & WILLIAMS LLP

Edward M. McNally (#614)
Liza H. Sherman (#4124)
222 Delaware Avenue, 10th Floor
Wilmington, Delaware  19801
(302) 888-6800
*emcnally@morrisjames.com*
*lsherman@morrisjames.com*
Attorneys for Defendants Town of Elsmere,
    Ellis Blomquist, John Giles and Eugene Boneker

Dated:  November 7, 2005

1304888

16