## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| ELSMERE PARK CLUB, L.P.,<br>a Delaware limited partnership, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 04-1321 (SLR) |
| | : | |
| v. | : | **JURY TRIAL DEMANDED** |
| | : | |
| TOWN OF ELSMERE, a Delaware<br>municipal corporation, ELLIS<br>BLOMQUIST, EUGENE BONEKER,<br>and JOHN GILES, | : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS TOWN OF ELSMERE, ELLIS BLOMQUIST,
EUGENE BONEKER AND JOHN GILES'S
ANSWERING BRIEF IN OPPOSITION TO PLAINTIFF'S
EXPEDITED MOTION FOR LEAVE TO EXTEND SCHEDULING ORDER,
SERVE REVISED AND/OR SUPPLEMENTAL EXPERT REPORTS
TO ADDRESS CLAIMS AND NEW DOCUMENTS PRODUCED BY
DEFENDANTS AND TO CONTINUE TRIAL DATE**

MORRIS, JAMES, HITCHENS & WILLIAMS LLP

Edward M. McNally (#614)
Liza H. Sherman (#4124)
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
(302) 888-6800
*emcnally@morrisjames.com*
*lsherman@morrisjames.com*
Attorneys for Defendants Town of Elsmere,
Ellis Blomquist, John Giles and Eugene Boneker

Dated: November 14, 2005

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT .............................................................................................................. 4

I.      CODIFIED PRINCIPLES OF JUDICIAL ECONOMY
        PROHIBIT CONTINUANCE ................................................................... 4

        1.      Federal And Local Rules Require
                Prompt Adjudication ....................................................................... 4

                a.      Plaintiff Does Not Have "Good Cause"
                        For A Continuance ............................................................... 7

                b.      Plaintiff Has Not Made A Timely
                        Appeal For A Continuance .................................................. 9

II.     AN EXTENSION OF THE SCHEDULING ORDER
        IS NOT WARRANTED ............................................................................ 11

CONCLUSION ......................................................................................................... 14

# TABLE OF AUTHORITIES

**Case**                                                                                          **Page**

Anderson v. Raymond Corp.,
    340 F.3d 520 (8th Cir. 2003) ...................................................................7

Finch v. Hercules Inc.,
    1995 WL 785100 (D. Del. Dec. 22, 1995)..........................................................11

Fitzgerald v. Walker,
    747 P.2d 752 (Idaho, 1987)....................................................................7

Harrison Beverage Co. v. Dribeck Importers, Inc.,
    133 F.R.D. 463 (D.N.J. 1990)..........................................................11,12

In re Leonetti,
    28 B.R. 1003 (D.C.Pa.1983) ...................................................................9

Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner,
    101 F.3d 145 (D.C. Cir. 1996) ...................................................................6

Koplove v. Ford Motor Co.,
    795 F.2d 15 (3d Cir. 1986)..................................................................11

Praxair, Inc. v. ATMI, Inc.,
    --- F.Supp.2d ---, 2005 WL 2994539
    (D. Del. Nov. 8, 2005) ...................................................................11

U.S. v. Diamond Industries, Inc.,
    145 F.R.D. 48 (D. Del. 1992) ...................................................................5

U.S. v. Osorio,
    929 F.2d 753 (1st Cir. 1991).................................................................9,10

U.S. v. Pollack,
    846 F.2d 1383, 1988 WL 47729 (9th Cir. 1988),
    cert. denied, 490 U.S. 1027 (1989) ...........................................................7

## Statutes and Rules

17 Am. Jur. 2d Continuance § 16 ...................................................................8,10

28 U.S.C. § 471 .......................................................................................4

28 U.S.C. § 473(a)(2)(B) ...........................................................................4

28 U.S.C. § 473(a)(2)(B)(i).........................................................................5

28 U.S.C. § 473(a)(2)(B)(ii) ........................................................................5

D. Del. LR 16.1(a)(1)................................................................................5

D. Del. LR 16.1(a)(2)................................................................................5

D. Del. LR 16.2(c) ...................................................................................4

## Other Authorities

S. Rep. No. 101-416 (1990), reprinted in 1990 U.S.C.C.A.N. 6802 ...................................5

Civil Justice Reform Act of 1990 ...............................................................4

E. Donald Elliot, "Managerial Judging and the Evolution of Procedure,"
         53 U. Chi. L. Rev. 306 (1986) ...........................................................6

**PRELIMINARY STATEMENT**

A recurrent theme in this case is the need for extensive remediation. The remediation at issue in Plaintiff's Motion[1], however, is not remediation of the environmental contaminants at the Apartments. Rather, the remediation efforts at issue are Plaintiff's ongoing efforts to patch the holes in the evidence it needs to establish a *prima facie* case.[2]

Plaintiff willfully and purposefully directed its valuation expert, David J. Wilk ("Wilk"), to perform an incorrect valuation of the Apartments. Wilk's report states:

> Due to the retrospective valuation date, we are aware of a dispute concerning the presence of environmental hazards as of the date of valuation. However, for the purpose of our analysis and valuation, <u>we were requested to estimate the value of the property assuming it was unaffected by any such condition as of the date of valuation.</u>

(D.I. 65 at A. 142, emphasis added).

Wilk's valuation was therefore manifestly incorrect insofar as it purported to value the Apartments in a fictional, uncontaminated state. Whether Plaintiff's direction to Wilk was the result of a calculated strategic choice to present a theory of damages that would artificially inflate Plaintiff's measure of alleged damages or was simply the result of uninformed error with respect to appropriate valuation methodology, Plaintiff has had an

---

[1] References herein to the "Motion" refer to Plaintiff's Expedited Motion For Leave To Extend Scheduling Order, Serve Revised And/Or Supplemental Expert Reports To Address Claims and New Documents Produced By Defendants and To Continue Trial Date (D.I. 89), unless otherwise indicated. All other capitalized terms shall have the meaning ascribed to them in Defendant's Opening Brief in Support of their Motion for Summary Judgment (D.I. 44).

[2] Defendants maintain that the proper disposition is this case is through the award of summary judgment in their favor, as requested in Defendants' Motion for Summary Judgment (D.I. 43). Defendants' Opposition to the Motion in no way undermines Defendants' belief in the propriety of disposition by summary judgment

adequate and reasonable period of time to "get it right;" that is, to enlist and compile accurate information from its experts so that trial could proceed as presently scheduled.

Instead, Plaintiff has repeatedly chosen to ignore the flaws in its valuation methodology (and of Wilk's expert report, as an offshoot), and, as a result, put Defendants to the expense of challenging both the correctness and the sufficiency of Plaintiff's evidence. Plaintiff was made aware of this failure as early as September 22, 2005, when Defendants timely filed a <u>Daubert</u> motion to exclude Wilk's report and testimony. That motion was brought on the grounds that the value of the Apartments in a "clean" state was not relevant to the question of the fair market value of the environmentally contaminated Apartments. At that juncture, Plaintiff could have sought leave of the Court to have Wilk amend his report and to take into consideration all of the implications of contamination. It chose not to.

Rather, Plaintiff <u>conceded</u> that Wilk's report alone was insufficient, but instead of actually amending or supplementing Wilk's report at that juncture, it claimed that Wilk's testimony had to be taken in conjunction with a "supplemental report" by Plaintiff's other putative expert, Larry W. Johnson (the "Supplemental Report") (Compare D.I. 89 at ¶ 9 with D.I. 76 at 21-22). Defendants then properly moved to strike the Supplemental Report on the grounds that, in addition to other fatal weaknesses, the Supplemental Report was impermissibly late, as it was served well after all relevant deadlines had passed. At that juncture, Plaintiff could have moved to reopen expert discovery, so that it could amend Wilk's report. Again, Plaintiff chose not to.

The result of Plaintiff's tunnel vision vis-à-vis its valuation methodology and damages evidence, is the very real, but completely foreseeable, threat that all of its

evidence on damages will be excluded. This "problem," which Plaintiff contends warrants re-opening discovery and a continuance of the trial date, is a problem of Plaintiff's own making. Plaintiff either willfully or negligently ignored the shortcomings of its evidence of its alleged damages. Under these circumstances, a continuance is simply not warranted.

For the reasons set forth herein, Defendants oppose Plaintiff's Motion. This is Defendants' Answering Brief in Opposition to the Motion.

**ARGUMENT**

I.    **CODIFIED PRINCIPLES OF JUDICIAL ECONOMY PROHIBIT CONTINUANCE**

Plaintiff concedes that the Motion was driven by the "reasonable substantive concerns" of the Defendants.  More to the point, Plaintiff is unable to surmount the exposed weaknesses in its case based upon the evidence presently in the record, and, as a result, seeks leave of the Court to regroup and restrategize.  Not only is this prejudicial to Defendants, as continuing the case will give Plaintiff an undue "second bite" at the proverbial apple at Defendants' expense, but it is simply an inadequate basis for granting a continuance where the lack of preparedness by Plaintiff is only the result of lack of diligence in investigating a key component of its case:  the valuation methodology.

1.    **Federal And Local Rules Require Prompt Adjudication**

All of the relief sought in Plaintiff's Motion leads to one ultimate goal—the delay of the trial of this case on its merits to permit Plaintiff to reinvent its theory of the case. Plaintiff's desire to reinvent the case, notwithstanding, however, there is a recognized right to prompt disposition of cases in civil litigation.  This right was codified in the Civil Justice Reform Act of 1990 ("CJRA"), which requires each United States District Court to enact a procedure to, "ensure just, speedy, and inexpensive resolutions of civil disputes." 28 U.S.C. § 471.  Part and parcel to the execution of this objective was the directive to set "early, firm trial dates." See 28 U.S.C. § 473(a)(2)(B) (emphasis added).

The CJRA requirement of firm trial dates is given effect through Local Rule 16.2, which requires that trial occur "within 12 months, if practicable, and no later than 18 months, after the filing of the complaint."  D.Del. LR 16.2(c).  "The only permitted

exception to these time limits countenanced by the CJRA is for a 'complex case.'"[3] U.S.

v. Diamond Industries, Inc., 145 F.R.D. 48, 49 (D.Del. 1992) (emphasis added), citing 28

U.S.C. § 473(a)(2)(B)(i) and (ii).  This is not a "complex case" and thus the time limits

set forth in Local Rule 16.2 are controlling.  The Complaint was filed on October 1, 2004

(D.I. 1).  Thus, ideals of civil justice suggest that trial would have begun over one month

ago.  The heavy demands upon this Court have necessitated a slightly later trial date; it

would be contrary to both the intent of the CJRA and the requirements of the Local Rules

to permit a continuance of this matter where the only cause for such delay is Plaintiff's

failure to timely and fully investigate its case.

The importance of firm trial dates cannot be overstated.  Congress and the District

Courts have recognized the critical role of firm trial dates in effective case management.

See S.Rep. No. 101-416, at 6 (1990), reprinted in 1990 U.S.C.C.A.N. 6802, 6822

("Several experts and substantial data indicate that setting early, firm trial dates is one of

the most effective tools in case management.")(See Ex. A), citing Wayne D. Brazil,

"Improving Judicial Controls over the Pretrial Development of Civil Actions: Model

Rules for Case Management and Sanctions," American Bar Foundation Journal (1981)

873, 917 ("Data produced by our interviews and by other studies indicate that fixing early

and firm dates for the completion of trial preparation and for the trial itself is probably the

single most effective device thus far developed for encouraging prompt and well-focused

case development."), citing American Bar Association, "Defeating Delay. Developing

---

[3] A determination of "complexity" first requires that a party give notice of its belief that the matter may be complex.  Once a party gives notice, then the District Court is obligated to engage in an analysis of certain considerations which are set forth in the Local Rules for the District of Delaware. D. Del. LR 16.1(a)(1) and (2).  Plaintiff has never notified the court that this is a "complex" matter and, indeed, even if it had, the matter does not meet the criteria set forth in Local Rule 16.1(a)(2) for such determination.

and Implementing a Court Delay Reduction Program," (1985) at 39 (A firm trial date is a vital feature of any case management system for four reasons: "(1) Settlement probabilities are increased dramatically when enforced early evaluation devices are backed by a certain trial date; (2) Where the court requires counsel to adhere to schedules for the completion of events, credibility is enhanced when the court also complies with time deadlines; (3) No attorney wants or will assemble a case of witnesses and parties only to be frustrated when the trial does not begin when scheduled; and (4) A firm trial date is cost-effective for the trial attorney because it allows efficient and predictable scheduling of the only commodity the attorney has to sell—time."). See also E. Donald Elliott, "Managerial Judging and the Evolution of Procedure," 53 U. Chi. L. Rev. 306, 313-314 (1986)("Perhaps the most important single element of effective managerial judging is to set a firm trial date…This creates incentives for attorneys to establish priorities and 'narrow the areas of inquiry and advocacy to those they believe are truly relevant and material' and to 'reduce the amount of resources invested in litigation.'").

Because of the importance of adhering to established trial dates, District Courts generally disfavor the granting of continuances in all but the most extreme of cases. "[T]he parties and their counsel should be bound by the dates specified in any first scheduling or other scheduling order, and that no extensions or continuances should be granted, except on a timely showing of good cause…. Once the schedule is set at the scheduling conference, the presumption should be firmly against the granting of continuances." Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner, 101 F.3d 145, 152 (D.C. Cir. 1996), citing Final Report of the Civil Justice Reform Act Advisory Group of the United States District Court for the District of Columbia 37, 41 (Aug.

1993).  As set forth below, this case is not one where a deviation from the general policy of adhering to an original trial date is warranted.

### a.    Plaintiff Does Not Have "Good Cause" For A Continuance

Plaintiff cannot show "good cause" to rebut the judicial and statutory disinclination to grant continuances.  The putative need for a continuance in this case is only the result of Plaintiff's tunnel vision—the misguided choice to pursue one method of computing its alleged damages, regardless of the propriety of that method, to the exclusion of all others.  Plaintiff gambled by proffering an unsupportable valuation methodology in an approach that, if successful, would maximize Plaintiff's recovery.  In so doing, Plaintiff sacrificed scientific validity and accuracy in its computation.  Plaintiff has reconsidered the wisdom of its original strategy and now seeks to burden the Court and the Defendants with unnecessarily protracted litigation.  Such failures of judgment do not constitute the requisite "good cause" for a continuance.

Indeed, it has been widely held that failure to adequately prepare one's case for trial is not "good cause" for a continuance.  See U.S. v. Pollack, 846 F.2d 1383, 1988 WL 47729 (9th Cir.1988), cert. denied, 490 U.S. 1027 (1989) (No abuse of discretion in denying continuance where "the need for the continuance was created by [movant's] own lack of diligence in preparing for trial. [Movant] cannot be allowed to capitalize on his own failure to prepare for trial."); Anderson v. Raymond Corp., 340 F.3d 520, 525 (8th Cir. 2003) (Movant was on notice that expert's testimony had a good chance of being stricken and the district court was "not required to reopen discovery to give [movant] a second bite at the apple."); Fitzgerald v. Walker, 747 P.2d 752, 755 (Idaho 1987) (A continuance is properly denied where a party's inability to produce an expert witness "to

testify as to liability in their legal malpractice action" was due to counsel's lack of diligence in securing such a witness."); 17 Am. Jur. 2d Continuance § 16 ("The necessity for a postponement must not be attributable to the applicant's own neglect. For example, if the movant has ample opportunity to arrange for a witness' testimony and fails to do so, the movant is not entitled to a continuance. Likewise, delay in engaging an expert until the party learns a dismissal motion will be denied shows a lack of diligence and justifies the denial of the continuance. Further, failure to obtain a backup witness when a party's proposed expert testimony is excluded, even when the testimony is excluded on the day of trial on a motion in limine, does not entitle the party to a continuance, where the party is on notice for months that the expert might be excluded but does nothing to find a backup.").

A lack of diligence should not now be rewarded where Plaintiff has had ample time to confer with its experts, to become informed of the relevant valuation methodology, to subpoena the JAB Documents and to otherwise demonstrate vigilance in the prosecution of its case. This fact is made plain by virtue of the fact that Plaintiff procured reports by both Wilk and Johnson, albeit reports that do not bear on the ultimate computation of Plaintiff's alleged damages. Plaintiff could have directed Wilk appropriately at the outset or, in the alternative, enlisted Wilk's assistance in determining the proper methodology for valuing contaminated properties. Instead, Plaintiff made an unwise but calculated strategic decision to pursue one theory of damages to the exclusion of all others. That decision is simply not "good cause" for a continuance.

**b.    Plaintiff Has Not Made A Timely Appeal For A Continuance**

Plaintiff has alleged that a continuance is implicated because it only recently became aware of the host of evidentiary problems it must contend with prior to trial. (Motion at ¶ 1, 11) (D.I. 89). This statement is false. In fact, Plaintiff, with diligence, would have been aware of the shortcomings of its evidence at the outset. The failures were discovered by Defendants not through any particularized or specialized factual knowledge, but only with legal and factual research on the subject of valuations of contaminated properties.

In any event, Plaintiff was on notice of these shortcomings as of September 22, 2005, the date Defendant's filed their Motion in Limine to Exclude the Expert Report and Testimony of David J. Wilk. (D.I. 55). Plaintiff was made yet further aware of its evidentiary problems with Defendants' Motion to Strike the Supplemental Report, filed October 12, 2005. (D.I. 74). Finally, Defendants plainly put Plaintiff on notice of its lack of evidence in e-mail correspondence between counsel for both parties. (See Ex. B). In that e-mail, counsel for the Defendants posited, "Please explain to me how this case can possibly be tried in January. In effect the plaintiff has no damages proof now." (Ex. B).

Thus, Plaintiff has not timely brought the Motion, where it was on notice of the shortcomings of its expert testimony for approximately six weeks before seeking leave of the Court to rectify the failures of its evidence. Accordingly, Plaintiff's Motion is not timely made and should be denied on that basis. See In re Leonetti, 28 B.R. 1003 (D.C.Pa. 1983)(Holding that denying a continuance necessitated by counsel's "bad planning" and failure to timely notify the Court upon first becoming aware of evidentiary issues was not an abuse of discretion). See also U.S. v. Osorio, 929 F.2d 753 (1st Cir.

1991) (Finding that it is "[A] claim that [a party] was unfairly surprised is severely undermined, if not entirely undone, by his neglect to ask the district court for a continuance to meet the claimed exigency."); 17 Am. Jur. 2d Continuance § 43 ("A trial court may properly deny a continuance … where the request for the continuance is not made until the last minute.").

## II.    AN EXTENSION OF THE SCHEDULING ORDER IS NOT WARRANTED

Plaintiff's consistent disregard for this Court's Scheduling Order is problematic. As set forth in depth above, principles of judicial economy, preservation of judicial resources and a universal interest in expeditious resolution of litigation prohibit the casual extension of scheduling orders.

Scheduling orders "are at the heart of case management." Koplove v. Ford Motor Co., 795 F.2d 15, 18 (3d Cir. 1986). This Court recently expanded on the importance of adhering to its scheduling orders in Praxair, Inc. v. ATMI, Inc., --- F.Supp.2d --- , 2005 WL 2994539 (D. Del. Nov. 8, 2005). In that case, defendants moved to strike portions of an expert report which relied upon certain prior art references disclosed after the close of discovery and in violation of the Court's scheduling order. This Court recognized that, "fidelity to the constraints of Scheduling Orders and deadlines is critical to the Court's case management responsibilities," and that, "flouting of discovery deadlines causes substantive harm to the judicial system." Praxair at *5, citing Finch v. Hercules Inc., 1995 WL 785100, *9 (D. Del. Dec. 22, 1995).

With trial fast approaching, the only purpose that would be served by extending the scheduling order to permit revised and/or supplemental expert reports would be permitting Plaintiff to delay trial. The issue is not merely the introduction of a particular report, but the resultant need to procure rebuttal witnesses, depose Plaintiff's experts and the rebuttal witnesses and, above all, the motion practice flowing therefrom. As recognized in Harrison Beverage Co. v. Dribeck Importers, Inc., 133 F.R.D. 463 (D.N.J. 1990), "[T]he attempted injection of new issues on the eve of trial, as in this case, necessarily implicates the scheduling orders entered in this case, to the extent that further

11

discovery would be required, further dispositive motion practice would occur, and the Joint Final Pre-Trial Order would have to be amended to accommodate new developments. To argue that there should be a liberal policy of freely permitting amendments is to ignore, in an old case such as this one, the purposes of case management." Harrison Beverage 133 F.R.D. at 469.

As above, Plaintiff simply does not have good cause to extend the Scheduling Order. Although it recently received the JAB Documents from Defendants, such documents have been available to Plaintiff since the outset of litigation and possibly earlier. As set forth in Defendant's Answering Brief in Opposition to Plaintiff's Motion to Strike Exhibit A of the 9/22/05 Affidavit of Liza H. Sherman (D.I. 81), Defendants offered Plaintiff an opportunity to obtain the JAB Documents at the same time the documents were received by Defendants. Plaintiff refused to do so. Instead of procuring the JAB Documents through its own diligence or through cooperation with Defendants, Plaintiff instead made the strategic choice to present a valuation paradigm using only an estimate of remediation costs, which estimate would inflate its measure of alleged damages by nearly $700,000. The failure and refusal of Plaintiff to obtain the JAB Documents at an earlier juncture was a calculated strategic choice by Plaintiff, which Plaintiff appears now to regret. That regret, however, does not undermine the interests of both the Court and the Defendants in having this matter resolved in a timely fashion. Reopening discovery and extending the scheduling order would undermine that interest and, therefore, are not warranted given the circumstances at hand.

Plaintiff alleged that its failure to timely obtain accurate expert testimony is a mere technicality. (D.I. 89 at ¶ 13). Not so. Rather, timely preparation for trial is a

fundamental, inescapable requirement of parties to litigation. In this case, Plaintiff's lack of preparedness is not owing to any particular surprise to the Plaintiff regarding the facts of the case, but only to gambling on the evidence and relevant valuation methodology required to prove a *prima facie* case and losing that bet. Accordingly, Plaintiff's error in judgment and lack of diligence should not be rewarded by allowing Plaintiff to remedy its failure of judgment at the expense of the Defendants.

## CONCLUSION

Plaintiff's dilatory tactics are the result either a lack of diligence in investigating the proper valuation methodology or of an ill-advised strategic decision to pursue an incorrect valuation methodology in order to trump up its measure of allege damages. Neither extension of the Scheduling Order nor a continuance of the trial date is warranted where, in either event, Plaintiff has simply failed to procure the appropriate expert reports in time for trial.  Hence, the Motion should be denied in its entirety.

MORRIS, JAMES, HITCHENS & WILLIAMS LLP

Edward M. McNally (#614)
Liza H. Sherman (#4124)
222 Delaware Avenue, 10th Floor
Wilmington, Delaware  19801
 (302) 888-6800
*emcnally@morrisjames.com*
*lsherman@morrisjames.com*

Attorneys for Defendants Town of Elsmere,
    Ellis Blomquist, Eugene Boneker and John Giles

Dated:  November 14, 2005

# Exhibit A

Westlaw.

S. REP. 101-416                                                    Page 1

S. REP. 101-416, S. Rep. No. 416, 101ST Cong., 2ND Sess. 1990, 1990 U.S.C.C.A.N.
6802, 1990 WL 201668 (Leg.Hist.)

**(Cite as: 1990 U.S.C.C.A.N. 6802)**


**\*6802** P.L. 101-650, JUDICIAL IMPROVEMENTS ACT OF 1990
DATES OF CONSIDERATION AND PASSAGE
House: September 27, October 27, 1990
Senate: October 27, 1990
House Report (Judiciary Committee) No. 101-733,)
Sept. 21, 1990 (To accompany H.R. 5316)
Senate Report (Judiciary Committee) No. 101-416),
Aug. 3, 1990 (To accompany S. 2648)
Cong. Record Vol. 136 (1990)
RELATED REPORTS
House Report (Judiciary Committee) No. 101-732),
Sept. 21, 1990 (To accompany H.R. 3898)
House Report (Judiciary Committee) No. 101-734),
Sept. 21, 1990 (To accompany H.R. 5381)
House Report (Judiciary Committee) No. 101-512),
June 1, 1990 (To accompany H.R. 1620)
House Report (Judiciary Committee) No. 101-123),
July 7, 1990 (To accompany H.R. 1391)
House Report (Judiciary Committee) No. 101-514),
June 1, 1990 (To accompany H.R. 2690)
Senate Report (Judiciary Committee) No. 101-265),
Apr. 19, 1990 (To accompany S. 198)
House Report (Judiciary Committee) No. 101-735),
Sept. 21, 1990 (To accompany H.R. 5498)

SENATE REPORT NO. 101-416
August 3, 1990
[To accompany S. 2648, as amended]


CONTENTS

|                                                                      | Page |
|----------------------------------------------------------------------|------|
| I.   Purpose ......................................................... | 1    |
| II.  Legislative History ............................................. | 3    |
|      A. Introduction and Consideration of S. 2027 .................... | 3    |
|      B. Introduction and Consideration of S. 2648 .................... | 3    |
|      C. Revisions to the Civil Justice Legislation .................. | 4    |
|      D. Negotiations with and Involvement of the Judicial Conference  |      |
|         of the United States ........................................ | 4    |
| III. Discussion ...................................................... | 6    |
|         Title I, the Civil Justice Reform Act of 1990               |      |
|      A. The Problems of Cost and Delay in Civil Litigation .......... | 6    |

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

S. REP. 101-416                                                              Page 18

S. REP. 101-416, S. Rep. No. 416, 101ST Cong., 2ND Sess. 1990, 1990 U.S.C.C.A.N.
6802, 1990 WL 201668 (Leg.Hist.)

**(Cite as: 1990 U.S.C.C.A.N. 6802)**

understood by judges, clients, and lawyers alike. For example, Judge Peckham said
in response to a question from Senator Thurmond:

   [I]ntellectually active involvement by the assigned judge early in the
pretrial period is an essential component of a district judge's role. Early in the
pretrial period, judges should help counsel open lines of communication, clarify
positions, identify issues whose early resolution will streamline the pretrial
process or position the case efficiently for productive settlement negotiations,
and plan a sensible, cost-effective discovery and motion practice.

   (Answer of Judge Robert F. Peckham to Written Question No. 1 of Senator
Thurmond.)

   Patrick Head, general counsel to FMC Corp., which has roughly 500 cases in civil
litigation at any one given time, agrees:

   The issues involved in a case often need focus and clarification up front, at
the beginning. With greater confidence about what the real issues will be, lawyers
can spend less time worrying about, and gathering information on, matters that
aren't real issues. If the judge assigned to the case takes an active role in
helping the parties focus the issues and narrow the scope of discovery, it would
eliminate most concern about being blind-sided, and thus would promote more
carefully tailored discovery.

   (Head, Written Statement, at 4.)

   The drafters of the most recent amendments to rule 16 of the Federal Rules of
Civil Procedure share this view as well. After extensive study, they concluded:

   Empirical studies reveal that when a trial judge intervenes personally at an
early stage to assume judicial control over a case and to schedule dates for
completion by the parties of the principal pretrial steps, the case is disposed of
by settlement or trial more efficiently and with less cost and delay than when the
parties are left to their own devices.

   (Advisory Committee Notes, Rule 16.)

**\*6822** c. The importance of setting early, firm trial dates

   Several experts and substantial data indicate that setting early, firm trial
dates is one of the most effective tools in case management. Prof. E. Donald
Elliott, Yale Law School, has written:

   Perhaps the most important single element of effective managerial judging is
to set a firm trial date***. This creates incentives for attorneys to establish
priorities and "narrow the areas of inquiry and advocacy to those they believe are
truly relevant and material" and to "reduce the amount of resources invested in
litigation."

   (Elliott, "Managerial Judging and the Evolution of Procedure," 53 U. Chi. L.
Rev. 306, 313, 314 (1986).)

   Similarly, Wayne Brazil, a magistrate in the U.S. District Court for the
Northern District of California and a leading court reform expert, reported in
1981 that

   data produced by our interviews and by other studies indicate that fixing
early and firm dates for the completion of trial preparation and for the trial
itself is probably the single most effective device thus far developed for

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

S. REP. 101-416, S. Rep. No. 416, 101ST Cong., 2ND Sess. 1990, 1990 U.S.C.C.A.N.
6802, 1990 WL 201668 (Leg.Hist.)

**(Cite as: 1990 U.S.C.C.A.N. 6802)**

encouraging prompt and well-focused case development.
    (Brazil, "Improving Judicial Controls over the Pretrial Development of Civil
Actions: Model Rules for Case Management and Sanctions," American Bar Foundation
Journal (1981) 873, 917.)
    A recent study of 26 urban trial courts by the National Center for State Courts
found that a firm trial date policy is related to faster case processing times.
(National Center for State Courts, Examining Court Delay. The Pace of Litigation
in 26 Urban Trial Courts (1989), at 32-34.)
    An American Bar Association task force on litigation costs and delay concluded
that a firm trial date is an absolutely vital feature of any case management
system. The task force identified four reasons "why judges, lawyers, and academics
agree on this concept:"
    Settlement probabilities are increased dramatically when enforced early
evaluation devices are backed by a certain trial date;
    Where the court requires counsel to adhere to schedules for the completion of
events, credibility is enhanced when the court also complies with time deadlines;
    No attorney wants or will assemble a case of witnesses and parties only to be
frustrated when the trial does not begin when scheduled; and
    A firm trial date is cost-effective for the trial attorney because it allows
efficient and predictable scheduling of the only commodity the attorney has to
sell-time.
    (American Bar Association, "Defeating Delay. Developing and Implementing a
Court Delay Reduction Program." (1985) at 39.)
    The Harris survey of more than 1,000 participants in the civil justice system
also found strong support for scheduling early and firm trial dates: 79 percent of
the plaintiff's litigators, 76 percent of defendants' and public interest
litigators, 85 percent of the corporate **6823** counsel and 89 percent of the
Federal judges surveyed agree with this view. (Harris Survey, at 55.)

d. The utilization of magistrates

    S. 2027 provided that an article III judge, and not a magistrate, should preside
over discovery-case management conferences and otherwise reduced the role of
magistrates in the pretrial process. For several reasons, this provision was
changed in title I of S. 2648.
    First, as Judge Enslen testified, fewer cases may settle if an Article III judge
presides over each conference, because the judge-who will eventually preside over
the trial, should one occur-"cannot be as frank with parties nor them with the
judge." (March 6, 1990, Hearing Transcript, at 108).
    Second, as Judge Enslen also testified, permitting magistrates to conduct the
management conference "effectively utilizes the time of the magistrate, leaving
the Article III judge to perform adjudicatory duties." (Enslen Written Statement,
at 44.)
    Importantly, given the increasingly heavy demands of the civil and criminal
dockets and the increasingly high quality of the magistrates themselves, the
committee believes that magistrates can and should play an important role,
particularly in the pretrial and case management process. [FN10]

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit B

## Tosi, Liza

| | |
|---|---|
| **From:** | McNally, Edward |
| **Sent:** | Monday, October 31, 2005 4:31 PM |
| **To:** | 'David Eagle' |
| **Subject:** | RE: Wilk Deposition |

David: I disagree with your characterization of your voice message. Indeed, it is I who should be upset. After all, as the email I sent over the weekend to your partner confirms, it is I who worked over the weekend to prepare for the deposition. Moreover, despite your vague reference to "certain confidential issues", you have not even now provided any reason to back out.

Please explain to me how this case can possibly be tried in January. In effect the plaintiff has no damages proof now. More importantly there are several motions the the Court will need to decide. it is not fair to me or my colleagues or to the Court to proceed this way.

-----Original Message-----
**From:** David Eagle [mailto:deagle@klehr.com]
**Sent:** Monday, October 31, 2005 4:19 PM
**To:** McNally, Edward
**Cc:** Sherman, Liza H.; Tosi, Liza
**Subject:** Re: Wilk Deposition

Ed -

Please be advised that we are not in a position to appear with Mr. Wilk for his deposition tomorrow.

We are at a loss to understand your lack of cooperation on this matter. I advised you by voice mail this morning that certain confidential issues arose recently with respect to our client's engagement of Mr. Wilk; that, as a result, we may not be able to call him as an expert witness in this case; and that, under such circumstances, his deposition may prove unnecessary and a waste of the parties' time and money.

We will continue to work on this diligently in the next couple of days and, if those issues are resolved, we will promptly re-schedule the deposition.

David.

>>> "McNally, Edward" <emcnally@morrisjames.com> 10/31/05 12:02 PM >>>
David:
    I did just get your call seeking to postpone the Wilk deposition on the basis that you may not use him as a witness. I cannot agree to your request. Therefore, I expect to go forward with that deposition tomorrow. Please advise me ASAP if the plaintiff intends to not produce Mr.. Wilk then.
Edward M.McNally
Morris, James, Hitchens & Williams LLP
222 Delaware Ave
Wilmington DE 19801
302-888-6880
emcnally@morrisjames.com

To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 14, 2005, I electronically filed Defendants

Town of Elsmere, Ellis Blomquist, Eugene Boneker and John Giles' Answering Brief In

Opposition To Plaintiff's Expedited Motion For Leave To Extend Scheduling Order,

Serve Revised And/Or Supplemental Expert Reports To Address Claims And New

Documents Produced By Defendants And To Continue Trial Date with the Clerk of the

Court using CM/ECF, which will send notification of such filing to the following:

> David S. Eagle, Esquire
> Klehr, Harrison, Harvey,
> Branzburg & Ellers LLP
> 919 Market Street, Suite 1000
> Wilmington, DE 19801
> Attorneys for Plaintiff Elsmere Park Club, L.P.

> Edward M. McNally (#614)
> Liza H. Sherman (#4124)
> Morris, James, Hitchens & Williams LLP
> 222 Delaware Avenue, 10th Floor
> Wilmington, DE 19801
> (302) 888-6800
> emcnally@morrisjames.com
> lsherman@morrisjames.com
> Attorneys for Defendants Town of Elsmere,
>     Ellis Blomquist and Eugene Boneker

Dated:  November 14, 2005

1309095/1